UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RAUL BARRON,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTHEW CATE, et al.,<br><br>    Defendant. | No. 2:11-cv-02678-JAM-ACP<br><br>**ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT, IN PART; GRANTING LEAVE TO AMEND, IN PART; and ADOPTING FINDINGS AND RECOMMENDATIONS, IN PART** |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On September 24, 2012, the Magistrate Judge filed Findings and Recommendations (Doc. #17) which were served on Plaintiff and contained notice to Plaintiff that any objections to them were to be filed within fourteen days. Plaintiff filed objections to the Findings and Recommendations (Doc. #26).

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this Court conducted a de novo review of this case.

## I. STANDARD

Courts are required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). A complaint or portion thereof must be dismissed if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). A court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227. A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

"The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d

ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, a court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

## II. BACKGROUND

Plaintiff's Second Amended Complaint ("SAC") alleges that he was confined on Contraband Surveillance Watch ("CSW") by Defendant Alcaraz, at least in part, on the basis of his race. Plaintiff further alleges that Defendants Whitfield and Fowler falsified source item reports in retaliation for Plaintiff's assertion of his Fifth Amendment right to remain silent, and that those reports were used to validate him as a gang member. In order to validate an inmate as a gang member, California prison regulations require at least three independent source items or pieces of evidence to prove membership or association with a gang. At least one item must show a direct link to a current, validated gang associate. Source items are evidence of such membership or association, such as photographs, written

3

material, and staff information.  See Cal. Code Regs. tit. 15, § 3378.

Plaintiff further alleges that his confinement while on CSW violated the Eighth Amendment, and that the procedures used to validate Plaintiff as a gang member and resulting Segregated Housing Unit placement violated due process.

### III. OPINION

#### A. Discrimination

Plaintiff alleges that Defendant Alcaraz placed him on CSW because of his race, thereby discriminating against him. SAC ¶ 18. The Magistrate Judge's Findings and Recommendations did not address this claim.

Plaintiff alleges that on January 10, 2009, Defendant Alcaraz had been watching Plaintiff eat dinner and then accused him of swallowing contraband. When Plaintiff asked Defendant Alcaraz why he had been staring at him, Defendant Alcaraz allegedly responded: "I like to see which Mexicans sit with the Blacks because I know they're 'northerners,' and northerners carry contraband in their mouths." Plaintiff defines "northerner" as a Hispanic person from the Northern region of California. Id. ¶ 14. Defendant Alcaraz allegedly told Plaintiff he could either become an informer and be sent to a prison of his choice, or be placed on CSW. Plaintiff maintains that he had no information to give, so Defendant Alcaraz put him on CSW. Id. ¶¶ 14-15.

"'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a

plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "[S]pecific, racially tinged remarks" are sufficient to show discriminatory intent and purpose. See Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Id. (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

The allegation that Defendant Alcaraz told Plaintiff "I like to see which Mexicans sit with the Blacks because I know they're 'northerners,' and northerners carry contraband in their mouths" supports the existence of discriminatory intent and purpose. See SAC ¶ 14. Accepted as true for the purposes of this review, the allegation also tends to show that Defendant Alcaraz accused Plaintiff of swallowing contraband due to his race. See id. ¶ 101. Defendant Alcaraz's accusation then led to Plaintiff being placed on CSW. Therefore, Plaintiff has stated a discrimination claim against Defendant Alcaraz.

B. Retaliation

The Magistrate Judge's Findings and Recommendations concluded that Plaintiff's allegations were sufficient to state a retaliation claim only as to Defendants Alcaraz and Fowler. Plaintiff objects that he did not intend to allege a claim of retaliation against Defendant Alcaraz. Objections at 2. Accordingly, the Court finds that Plaintiff has not stated a

5

retaliation claim against Defendant Alcaraz. The Magistrate Judge's Findings and Recommendations did not consider Plaintiff's retaliation claim against Defendant Whitfield.

"A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Thus, to succeed on the merits of a retaliation claim, a prisoner must demonstrate that he was retaliated against for exercising his constitutional rights, and that the retaliatory action does not advance a legitimate penological goal, or is not narrowly tailored to achieve that goal. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff alleges that Defendants Whitfield and Fowler retaliated against him for exercising his Fifth Amendment rights. "The privilege against self-incrimination does not terminate at the jailhouse door. . . ." McKune v. Lile, 536 U.S. 24, 36 (2002). "It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 468 n.37 (1966). In the prison context, constitutional liberties are weighed against legitimate penological interests, meaning that the Fifth Amendment applies in limited circumstances. See Mauldin v. Powers, No. 1:05-CV-00892-AWI-SMS-P, 2006 WL 2926747, at *4 (E.D. Cal. Oct. 11, 2006) (explaining that prisoners are entitled to Fifth Amendment

6

rights during custodial interrogations).

A threshold issue is therefore whether each of Defendant Whitfield's and Defendant Fowler's attempts to interview Plaintiff were made during the course of a custodial interrogation. The Ninth Circuit addressed this issue in the context of a Sherriff's Deputy questioning a county jail inmate. In <u>Cervantes v. Walker</u>, the guard found contraband during a routine search and engaged in "on the scene" questioning to determine the nature of the discovery. The interrogation took place in the jail library while the inmate was in the process of being moved to a different cell. 589 F.2d 424, 428 (9th Cir. 1978). In finding that the interrogation was not custodial, the <u>Cervantes</u> court reasoned that, in the prison context, determining whether there is a custodial interrogation is dependant upon whether there is change in the prisoner's surroundings that "results in an added imposition on his freedom of movement." <u>Id.</u>

> Therefore, the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him must be considered to determine whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting. Such a situation requires Miranda warnings.

<u>Id.</u> (internal citations omitted).

Plaintiff alleges that he was already on CSW in the Administrative Segregation Unit when Defendant Whitfield asked Plaintiff if he could take photos of his tattoos; this interview allegedly took place immediately after Plaintiff had been "read outloud [sic] the allegations of his CSW placement." SAC ¶ 19.

7

As discussed below, Plaintiff alleges that he was under close scrutiny, shackled, and segregated from the general population while on CSW. Id. ¶ 16. Plaintiff alleges that after he told Defendant Whitfield he could not take any photos, Defendant Whitfield "accused Plaintiff of using Northern Structure policy" and "taunted" Plaintiff in an attempt to induce him to share information. Plaintiff alleges that he then asserted his Fifth Amendment right against self-incrimination. In response, Defendant Whitfield allegedly threatened to give Plaintiff one "point toward validation." Id. ¶ 19.

The circumstances alleged by Plaintiff, since he was on CSW at the time, show a "restriction of his freedom over and above that in his normal prisoner setting" and weigh heavily in favor of classifying the interview as a "custodial interrogation." See Cervantes, 589 F.2d at 428. Plaintiff was also being questioned about information related to gang affiliations, which falls within the ambit of information protected by the right against self-incrimination. Because this was a custodial interrogation based on Plaintiff's allegations, Plaintiff had a constitutional right to be silent and to not be punished for that silence.

Plaintiff alleges that Defendant Whitfield wrote a report containing false information in retaliation for exercising his Fifth Amendment right against self-incrimination by declining to allow Defendant Whitfield to take photos of his tattoos. This report was used as a source item to validate Plaintiff as a gang member. Therefore, the Court finds that Plaintiff states a viable retaliation claim against Defendant Whitfield.

In regard to Defendant Fowler, however, Plaintiff does not allege restrictions sufficient to constitute a custodial interrogation. During his interview with Defendant Fowler, Plaintiff was not under CSW conditions and was merely being questioned after an officer accused him of swallowing contraband. See SAC ¶¶ 34-37. This situation is closer to that in Cervantes where the court found that the prisoner was not under a custodial interrogation. 589 F.2d at 428. Plaintiff's allegations are not sufficient to show a custodial interrogation and the constitutional right to remain silent therefore does not apply. Accordingly, the Court finds that Plaintiff has not stated a claim against Defendant Fowler and the retaliation claim against him is dismissed with prejudice.

    C.    Eighth Amendment Violations

The Magistrate Judge's Findings and Recommendations did not address Plaintiff's Eighth Amendment claims.

In his SAC, Plaintiff alleges that for the eight days that Plaintiff was on CSW he was not allowed to "shower, brush his teeth, change his clothes or clean his cell . . .[;] Plaintiff was subjected to . . . sensory and sleep deprivation, constant lighting, taunts and intimidation from staff, degrading treatment and the constant, improper use of mechanical restraints." The restraints allegedly caused "bruising and lacerations on both wrists and ankles and last[ed] several weeks . . . [for which] Plaintiff later obtained medical attention and documentation." Id. ¶ 16.

Plaintiff adds additional allegations related to the CSW conditions in his Objections. "[A] district court has

discretion, but is not required to consider new evidence presented for the first time in a party's objection to a Magistrate Judge's recommendation." U.S. v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) (considering objections to a magistrate's recommendation on a motion to suppress). This rule applies equally to district courts reviewing a pro se prisoner-litigant's objections. See Brown v. Roe, 279 F.3d 742, 745 (noting that is would have been an abuse of discretion **not** to consider a new claim raised in an uneducated, pro se, habeas petitioner's objections to a magistrate's recommendation that the petition be dismissed); Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004) (finding an abuse of discretion in not considering objections to magistrate judge's recommendation for summary judgment against a prisoner bringing claims under § 1983).

Therefore, the Court considers the following additional allegations contained in Plaintiff's Objections:

> CSW consists of mummifying a prisoner in socks, taped at the ankles; two pairs of boxer shorts, one forward, one backward, taped at the waist and thighs; a t-shirt, taped at the waist and arms; two full length (uni-piece) jumpsuits, one forward, one backward taped around the arms, chest, waist, thighs and ankles . . . .
>
> While on CSW, I was not allowed to shower, soap, or to change/receive clothes which became soiled with sweat, urine, and feces after using the rest-room . . . .
>
> I was not allowed any bedding; i.e. blankets, sheets or pillows . . . .
>
> The toilet was covered with a medieval lock. If I had to use the restroom, I had to ask the C.O.'s [Correctional Officers] who would make me wait sometimes for hours . . . .

Objections at 11-12.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. See Toussaint v. McCarthy, 801 F.2d 1080, 1107; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

"[A] prison official violates the Eighth Amendment only when two requirements are met." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, the plaintiff must make a subjective showing that the prison official knew of and disregarded an excessive risk to an inmate's health or safety. Id. at 837; Johnson v. Lewis, 217 F.3d 726, 734 (2000). The state of mind required for this second prong is "deliberate indifference," or "consciousness of [the] risk" of harm to the inmate. Farmer, 511 U.S. at 834, 840.

Taking into consideration Plaintiff's SAC and additional allegations in his Objections, Plaintiff has made a showing of sufficiently serious unsafe conditions for the eight days that he was on CSW. See SAC ¶ 16; Objections at 11–12. For example, Plaintiff alleges that he "was not allowed to shower, soap, or

to change/receive clothes which became soiled with sweat, urine, and feces after using the rest-room . . . ." Objections at 11-12. Cf. Johnson, 217 F.3d at 732 (finding that plaintiffs stated a cognizable Eighth Amendment claim where "they did not receive adequate access to toilets to avoid soiling themselves, and they were not allowed to clean themselves thereafter" during a four-day lockout).

Plaintiff's Objections state that "staff was deliberately indifferent to my conditions." His conclusion is supported by allegations that correctional officers denied him showers after Plaintiff asked for them and by making him wait, "sometimes for hours," to use the bathroom. Id. at 12. However, this claim is still deficient in that Plaintiff fails to adequately name culpable defendants for his Eighth Amendment cause of action. See Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009) (dismissing a complaint because specific actions were not pled against specific government officials). Plaintiff alleges that all Defendants violated his Eighth Amendment rights. However, he does not attribute any specific omissions to any individual. Plaintiff only refers to the indifference of "C.O.s" while on CSW without identifying specific officers. Therefore, this claim is dismissed for failure to state a claim.

"Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 2000). Based on Plaintiffs SAC and his Objections, it is likely that Plaintiff can amend this claim by

12

including the facts from his objections and allegations against specific officers. Leave to amend is therefore appropriate.

D. <u>Due Process Violations</u>

The Magistrate Judge found that the crux of Plaintiff's SAC is the allegation that he was improperly validated as a gang member, which violated his right to due process. The allegations in support of his due process claim describe how various source items were improperly used to validate Plaintiff, specifically by not following state regulations for validating prisoners.

After review, the Court adopts the Magistrate Judge's Findings and Recommendations with respect to the due process claims and dismisses all of Plaintiff's due process claims with prejudice for failure to state a claim.

## IV. ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff may proceed with the retaliation claim against Defendant Whitfield and the discrimination claim against Defendant Alcaraz.

2. Plaintiff is given leave to amend his Eighth Amendment claim within twenty days consistent with this Order.

3. Plaintiff's remaining claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated: March 12, 2013

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE