1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY RAUL BARRON,                    No.  2:11-cv-2678 JAM AC P

12              Plaintiff,

13        v.                                 FINDINGS AND RECOMMENDATIONS

14   A. ALCARAZ, et al.,

15              Defendants.

16

17   I.  INTRODUCTION

18          Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights

     action filed pursuant to 42 U.S.C. § 1983.  This action proceeds on plaintiff's Third Amended
19
     Complaint (TAC), ECF No. 32, against four defendants, on the following claims:
20

21              (1) discrimination in violation of the Fourteenth Amendment's
                Equal Protection Clause against defendant Alcaraz for allegedly
22              targeting plaintiff, on [January 10, 2009],[1] for a contraband search
                based on plaintiff's racial or ethnic classification; (2) violation of
23              plaintiff's Eighth Amendment rights by defendant Alcaraz for the
                conditions of confinement to which plaintiff was subjected for the
24              eight days Alcaraz placed him on a 24-hour-a-day contraband
                surveillance watch (CSW); (3) retaliation by defendant Alcaraz for
25              plaintiff's refusal to provide information when Alcaraz attempted to
                coerce it from him; (4) retaliation in violation of the First
26
     _____
27   [1]  Plaintiff challenges defendant Alcaraz' conduct on January 10, 2009.  See TAC at ¶ 9; see also
     ECF No. 29 at 4 (Order filed Mar. 12, 2013).  The order quoted above erroneously identified the
28   subject date as July 1, 2009, which referenced plaintiff's second contraband surveillance watch.

Amendment for the exercise of his Fifth Amendment right against self-incrimination, against defendant Whitfield; and (5) violation of the Eighth Amendment by defendants Cate and Swarthout for the authorization and/or implementation of the CSW practice or policy.

See ECF No. 39 at 3 (Order directing service of TAC). Plaintiff seeks relief in the form of monetary and punitive damages as well as injunctive relief. ECF No. 32 at 16-7.

Currently pending are two motions for summary judgment filed by defendants premised on plaintiff's alleged failure to exhaust his administrative remedies before commencing this action. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and Local General Order No. 262. For the reasons that follow, this court recommends that defendants' motions be granted in part, and that this action proceed on plaintiff's claims against defendant Whitfield.

II. FACTUAL BACKGROUND[2]

Plaintiff is currently confined in the Security Housing Unit (SHU) at the California Correctional Institution (CCI), in Tehachapi, California. At all times relevant to this action, plaintiff was confined in California State Prison Solano (CSP-SOL). Pursuant to his TAC, plaintiff alleges as follows.[3]

On January 10, 2009, plaintiff was in the CSP-SOL dining hall, eating his evening meal without disruption or violating any rules. Plaintiff noticed that defendant Alcaraz was staring at him "with a sour look." As plaintiff exited the dining hall, Alcaraz told him to "get up against the wall." Plaintiff complied, turning his face toward the wall and placing both hands on the wall. Alcaraz patted plaintiff down, then told him to "turn around and open your mouth." Plaintiff complied, and Alcaraz looked in plaintiff's mouth while shining a flash light. Id. at 4. Plaintiff denied swallowing anything, but Alcaraz said, "Yes you did. You swallowed something. Turn around and cuff up." Plaintiff complied.

---

[2] These background facts are undisputed for purposes of these summary judgment motions only, and are based upon the allegations in, and reasonable inferences from, plaintiff's verified TAC, see ECF No. 32, and plaintiff's declarations in opposition to the pending motions, see ECF No. 48 at 24-7, and ECF No. 67 at 30-2.

[3] References to page numbers in filed documents reflect the court's electronic pagination, not the page numbers designated by the parties on the original documents.

Alcaraz handcuffed plaintiff behind his back and escorted him to the Program Complex. There Alcaraz and three unidentified correctional officers strip searched plaintiff. Plaintiff was then "recuffed and taped around his upper thighs as not to excrete contraband." Id. at 5. Plaintiff "was then enjoined to straddle a backward chair while Alcaraz began to write his report." Id. Plaintiff asked Alcaraz why he had been staring at him in the dining hall, and Alcaraz responded, "I like to see which Mexicans sit with the Blacks because I know they're 'Northeners' and Northeners carry contraband in their mouths." Alcaraz informed plaintiff that he was placing plaintiff on Contraband Surveillance Watch (CSW) and explained the procedures. When plaintiff asked for an x-ray instead, Alcaraz told plaintiff he could avoid CSW and be sent to the prison of his choice if he provided information, "such as 'who was running the yard.'" Id.

Because plaintiff was "unable or unwilling to provide information," Alcaraz placed plaintiff on CSW in the Administrative Segregation Unit (ASU). Id. Plaintiff was on CSW for eight consecutive days, under the constant observation of correctional officers. Plaintiff describes the experience as "torture," in violation of the Eighth Amendment's proscription against cruel and unusual punishments,[4] and asserts that Alcaraz improperly targeted plaintiff for CSW based on his race, suspected gang affiliation and/or refusal to provide information, rather than a bona fide

---

[4] Plaintiff's description of his CSW placement includes the following

> Barron was mummified in socks, taped around each ankle; two pairs of boxer shorts, one forward, one backward, taped at the waist and thighs; a T-shift, taped around the waist and arms; two full length uni-piece jumpsuits, one forward, one backward, taped around the arms, chest, waist, thighs and ankles. And one pair of slipper karate shoes. [¶] Barron was placed in ankle restraints, cuffed around each ankle with a small connecting chain, waist restraints, cuffing each wrist to Barron's waist. Barron was then placed in a cell and restrained like this for an entire eight (8) days. [¶] The constant, improper use of mechanical restraints caused Barron undue physical pain and injuries with bruises, lacerations and swelling on both wrists and ankles which lasted several weeks. Barron later obtained medical attention and documentation.

TAC at 6. During CSW, plaintiff was unable to shower, shave, brush his teeth, change clothes, or exercise, and had difficulty sleeping. Plaintiff was subjected to the vagaries of the attending correctional officers, including being ridiculed and required to postpone some bowel movements. Id. at 7.

suspicion that plaintiff was concealing contraband.

Plaintiff contends that defendant Alcaraz "was aware of the conditions [of CSW] and deliberately indifferent to the pain and suffering inflicted upon" plaintiff. Id. at 9. Plaintiff also contends that defendant Cate, former Secretary of the California Department of Corrections and Rehabilitation (CDCR), and defendant Swarthout, former CSP-SOLWarden, were deliberately indifferent to plaintiff's suffering by authorizing and/or implementing the CSW practice and/or policy. Id.

On January 15, 2009, while plaintiff was still on CSW, he was shackled and escorted to an Institutional Classification Committee (ICC) meeting, comprised of seven correctional officials. Id. at 9. Alcaraz' allegations in support of plaintiff's CSW/ASU placement were read aloud. Then defendant Whitfield asked plaintiff if he had any tattoos. Plaintiff responded that he did. Whitfield asked if he could take photographs of plaintiff's tattoos. Plaintiff asked if he had a choice, and Whitfield said that he did. When plaintiff "exercised his Fifth Amendment right" to say "no" to the requested photographs, Whitfield stated that plaintiff's choice reflected his association with the Northern Structure prison gang and would count as "one point" toward plaintiff's validation as an associate of that gang. Id. at 10-1. Whitfield then completed a report falsely stating that plaintiff had refused to comment or be interviewed regarding his alleged gang association, rather than simply acknowledging that plaintiff had exercised his Fifth Amendment rights. This allegedly false report was relied on to move plaintiff to the SHU. Id. at 11.

III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies within the prison system before filing suit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The first motion for summary judgment, filed by defendant Alcaraz, asserts that the only administrative grievance (CDC 602 Inmate/ Parolee Appeal Form) plaintiff filed against him reached only First Level Review, where it was denied. ECF No. 41. Plaintiff filed an opposition to this motion, ECF No. 48, [5] and defendant

---

[5] Plaintiff initially contends that both motions should be denied because defendants failed to (continued…)

1    Alcaraz replied, ECF No. 50.

2        The second motion for summary judgment was filed by defendants Whitfield, Cate and

3    Swarthout. ECF No. 62. These defendants assert that none of plaintiff's appeals may reasonably

4    be construed to include claims against defendants Cate or Swarthout and, of the three appeals in

5    which plaintiff named defendant Whitfield, two were not exhausted and the third is not relevant

6    to plaintiff's claims in this action. Plaintiff filed an opposition to this motion, ECF No. 67, and

7    defendants Whitfield, Cate and Swarthout replied, ECF No. 68.

8    IV.  LEGAL STANDARDS

9        A.  Legal Standard for Summary Judgment Motions

10       Summary judgment is appropriate when the moving party "shows that there is no genuine

11   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12   Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of

13   proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144

14   v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

15   (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish

16   this by "citing to particular parts of materials in the record, including depositions, documents,

17   electronically stored information, affidavits or declarations, stipulations (including those made for

18   purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

19   that such materials "do not establish the absence or presence of a genuine dispute, or that the

20

21   provide their Rand notices to plaintiff in separate documents. A defendant moving for summary
     judgment is required to inform the plaintiff, if proceeding pro se, of the requirements for opposing
22   the motion. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998); Woods v. Carey, 684 F.3d
     934 (9th Cir. 2012); Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014). It is a routine practice of this
23   court to require that defendants provide Rand notices in distinctly separate documents. See ECF
     No. 27 at 4; ECF No. 42 at 4. In the present case, defendants set forth their Rand notices as a
24   preface to their Notices of Motion. See ECF No. 41 at 1-3; ECF No. 62 at 2-3.
         The purpose of setting forth a Rand notice in a separate document is to ensure that pro se
25   plaintiffs see the notice and are thereby fully informed of the requirements for opposing the
     motion for summary judgment. In the present case, plaintiff's instant argument and the content of
26   his oppositions to the pending motions demonstrate that he was fully informed of the
     requirements for opposing defendants' motions. As there has been no prejudice to plaintiff, the
27   court declines to recommend denial of the pending motions based on the failure of defendants to
     provide their Rand notices in separate documents.
28

adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ.

P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] Plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[6]

---

[6] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other (continued…)

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly

inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

1  support an assertion of fact or fails to properly address another party's assertion of fact, as

2  required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion

3  ….." Fed. R. Civ. P. 56(e)(2).

4        B.  <u>Legal Standards for Exhaustion</u>

5           1.  <u>Prison Litigation Reform Act</u>

6        Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

7  are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Under the

8  PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this

9  title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

10  facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a);

11  <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002) ("§ 1997e(a)' s exhaustion requirement applies to all

12  prisoners seeking redress for prison circumstances or occurrences").  "The PLRA mandates that

13  inmates exhaust all available administrative remedies before filing 'any suit challenging prison

14  conditions,' including, but not limited to, suits under § 1983."  <u>Albino</u>, 747 F.3d at 1171 (quoting

15  <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006)).

16        Failure to exhaust is "an affirmative defense the defendant must plead and prove."  <u>Jones</u>

17  <u>v. Bock</u>, 549 U.S. 199, 204 (2007).  "[T]he defendant's burden is to prove that there was an

18  available administrative remedy, and that the prisoner did not exhaust that available remedy."

19  <u>Albino</u>, 747 F.3d at 1172.  "[T]here can be no 'absence of exhaustion' unless some relief remains

20  available."  <u>Brown v. Valoff</u>, 422 F.3d 926, 937 (9th Cir. 2005).  Therefore, the defendant must

21  produce evidence showing that a remedy is available "as a practical matter," that is, it must be

22  "capable of use; at hand."  <u>Albino</u>, 747 F.3d at 1171.

23        In reviewing the evidence, the court will consider, among other things, "information

24  provided to the prisoner concerning the operation of the grievance procedure."  <u>Brown</u>, 422 F.3d

25  at 937.  Such evidence "informs our determination of whether relief was, as a practical matter,

26  'available.'"  <u>Id.</u>  Thus, misleading – or blatantly incorrect – instructions from prison officials on

27  how to exhaust the appeal, especially when the instructions prevent exhaustion, can also excuse

28  the prisoner's exhaustion.  <u>Albino</u>, 747 at 1173.

Although the Ninth Circuit has not clearly stated whether an official threat of retaliation may excuse an inmate's failure to administratively exhaust a prison grievance, the Court of Appeals has cited with approval cases from other circuits which have found such circumstances excusable. As recently set forth by United States District Judge Lucy H. Koh, from the Northern District of California:

> In Turner v. Burnside, one of the cases the Ninth Circuit cited with approval in Sapp [v. Kimbrell], 623 F.3d 813 (9th Cir. 2010), the Eleventh Circuit held that threats or intimidation on the part of prison officials is sufficient to excuse failure to exhaust administrative remedies if the threat "actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process" and "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." 541 F.3d 1077, 1085 (11th Cir. 2008); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) (holding that the Eleventh Circuit's analysis in Turner "serves as the best model"). Under the Eleventh Circuit's two-pronged test, the first inquiry – whether intimidation or a threat actually deterred the inmate from pursuing a part of the grievance process – is subjective: "the inmate must show that he was actually deterred." Tuckel, 660 F.3d at 1254. The second inquiry, whether the alleged threat would deter a reasonable inmate of ordinary firmness, is an objective one "requiring the district court to consider the context of the alleged threat or intimidation." Id. When a prisoner claims an excuse for failure to exhaust, the burden is on the prisoner to adduce evidence supporting his excuse. Id.; Albino, 747 F.3d at 1170.

Parrish v. Solis, Case No. 11-cv-01438 LHK, ECF No. 267 at 19-20 (N.D. Cal., Nov. 11, 2014), 2014 WL 5866935 at *11.

### 2. California Regulations

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006). This review process is set forth in California regulations that allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). An inmate must file the initial appeal within 30 working days of the action being appealed, and he must file each administrative appeal within 30

////

////

9

working days of receiving an adverse decision at a lower level.[7]  Id. § 3084.8(b).

The appeal process is initiated by the inmate filing a "Form 602," the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested."  Id. § 3084.2(a).  Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review."  Id. § 3084.5(b).  The appeals coordinator may refuse to accept an appeal, and she does so either by "rejecting" or "canceling" it.  Cal. Code Regs. tit. 15, § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator").  According to the regulations, "a cancellation or rejection decision does not exhaust administrative remedies."  Id., 3084.1(b).

When an appeal is "rejected," the appeals coordinator is required to "provide clear and sufficient instructions regarding further actions the inmate . . . must take to qualify the appeal for processing."  Id., § 3084.6(a)(1).  When an appeal is "cancelled," the prisoner "shall be notified of the specific reason(s) for the . . . cancellation."  Id., § 3084.5(b)(3).  If the appeals coordinator allows an appeal to go forward, the inmate must pursue it through the third level of review before it is deemed "exhausted."  Id. § 3084.1(b) ("all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted").

## V.  UNDISPUTED FACTS

Unless otherwise noted, the following facts are expressly undisputed by the parties or found to be undisputed pursuant to this court's review of the evidence.[8]  Relevant disputed facts

---

[7]  Although the current time frame for challenging an adverse administrative decision is 30 days, see Cal. Code Regs. tit. 15, § 3084.8(b), in 2009 it was 15 days from the date of notice, as set forth in each of the subject Form 602 appeals.

[8]  Defendants set forth their respective Statements of Undisputed Facts at ECF No. 41-1 at 1-3, and ECF No. 62-1 at 1-3.  Defendants rely almost exclusively on the same exhibits in both motions.  See Alcaraz MSJ, ECF No. 41-2 at 1-36; and Whitfield/Cate/Swarthout MSJ, ECF No. 62-2 at 1 to 36.  These exhibits are six inmate appeals submitted by plaintiff between January 2009 and February 2010.  See Declaration of CSP-SOL Appeals Coordinator N. Clark (Clark Decl.), and supporting printout of plaintiff's appeals as set forth by CDCR's Inmate/Parolee Tracking System (Clark Decl., Ex. A), ECF No. 41-2 at 1-6, and ECF No. 62-2 at 1-6.

In addition to his verified TAC, ECF No. 32, and declarations submitted in opposition to the pending motions, ECF No. 48 at 24-7, and ECF No. 67 at 30-2, plaintiff has submitted his own (continued…)

are noted.

• At all times relevant to this action, plaintiff was incarcerated at CSP-SOL; defendants Alcaraz and Whitfield were correctional officers at CSP-SOL, also charged with investigating inmate gang activity; defendant Swarthout was the Warden of CSP-SOL; and defendant Cate was the Secretary of CDCR.

• Plaintiff submitted the following six inmate appeals during the period January 2009 and February 2010.[9]

• Appeal Log No. CSP-S-09-00235 (Clark Decl., Ex. B):

In this appeal, plaintiff requested that defendant Alcaraz "be relieved of his duties" as a correctional officer and as an Institutional Gang Investigator (IGI), due to his alleged conduct on January 10, 2009, including searching plaintiff, making false accusations that plaintiff "swallowed contraband," and placing plaintiff on CSW, because of plaintiff's race. The appeal also challenged Alcaraz' placement of plaintiff on CSW, in retaliation for plaintiff refusing to provide information about other inmates, and alleged that CSW constitutes cruel and unusual punishment which caused plaintiff physical and emotional injuries.

This appeal was submitted on January 22, 2009, the day after plaintiff was released from the ASU following the challenged CSW. The appeal was denied on First Level Review (FLR) on March 12, 2009, and returned to plaintiff on March 18, 2009. Plaintiff avers that administrative remedies were effectively unavailable to him beyond the FLR due to the threat of retaliation. PSUF ¶ 4, ECF No. 48 at 21; PSDF ¶ 3, ECF No. 48 at 80.

////

---

Statements of Undisputed Facts (PSUF), see ECF No. 48 at 20-3, and ECF No. 67 at 27-9; plaintiff has also submitted a Statement of Disputed Facts (PSDF), ECF No. 48 at 80-1. The court acknowledges defendants' contention that plaintiff's briefing fails to comply with Local Rule 260(b), but finds that plaintiff's pro se filings, liberally construed, adequately set forth plaintiff's evidence in support of his oppositions and thus the information necessary for this court's assessment of defendants' motions on the merits.

[9] The printout of plaintiff's grievances as set forth by the CDCR Inmate/Parolee Tracking System includes two additional appeals, Appeal Log No. CSP-S-10-00383, and Appeal Log No. CSP-S-11-00024, but no party asserts that either of these matters are relevant to the instant action. See Clark Decl., Ex. A; ECF No. 41-2 at 5-6; and ECF No. 62-2 at 5-6.

- Appeal Log No. CSP-S-09-00374 (Clark Decl., Ex. C):

In this appeal, plaintiff requested that defendant Whitfield "be relieved of his duties" as a correctional officer and IGI, due to his alleged conduct on January 15, 2009, when Whitfield told plaintiff that his refusal to have his tattoos photographed would count as a point toward gang validation, and falsely stated that plaintiff refused to be interviewed rather than asserted his Fifth Amendment rights.

This appeal was submitted on January 29, 2009. FLR was bypassed. The appeal was denied in on Second Level Review (SLR) on March 26, 2009, and returned to plaintiff on April 2, 2009. Plaintiff avers that further review was unavailable. PSUF ¶ 5, ECF No. 67 at 28.

- Appeal Log No. CSP-S-09-00928 (Clark Decl., Ex. D):

In this appeal, plaintiff requested that the "Fictitious 128(B)" prepared by defendant Whitfield be removed from plaintiff's file and that all further interviews with plaintiff be recorded to protect plaintiff from false accusations and reports. Plaintiff alleged that on March 26, 2009, when plaintiff was interviewed concerning his Appeal Log No. CSP-S-09-00374, he was shown a Form 128-B prepared by Whitfield, purportedly on January 15, 2009, in support of plaintiff's gang validation. In this appeal, plaintiff alleged that Whitfield completed the Form 128-B as a reprisal against plaintiff for his submission of Appeal Log No. CSP-S-09-00374.

This appeal was submitted on April 10, 2009, denied on FLR on May 20, 2009, and returned to plaintiff on June 8, 2009. Plaintiff avers that the FLR was untimely and that, although he twice attempted to submit this appeal for SLR, he was prevented from exhausting it through no fault of his own. PSUF ¶ 6, ECF No. 48 at 22, and ECF No. 67 at 28; see also Pl. Decl. ¶ 12, ECF No. 48 at 27; Pl. Decl. ¶ 1, ECF No. 67 at 30-1.

- Appeal Log No. CSP-S-09-01414 (Clark Decl., Ex. E):

In this appeal, plaintiff challenged a May 21, 2009 ICC decision concerning his custody status. Plaintiff requested that he be "relieved of close custody and made 'Med A' custody," or "given [his] earned and deserved credit relieving [him] of Close B on 8-15-12."

This appeal was submitted on June 10, 2009, and granted in part – and hence administratively exhausted – on FLR on June 30, 2009. See also Clark Decl., Ex. A.

No party asserts that this appeal is relevant to the claims in this action.

• Appeal Log No. CSP-S-09-01878 (Clark Decl., Ex. F):

In this appeal, plaintiff requested that a "Fictitious 128(B)" prepared by defendant Correctional Sergeant Fowler (not a defendant in this action) be removed from plaintiff's file. Plaintiff stated that he received a copy of the form on July 18, 2009, and alleged that it contained numerous false statements, including statements falsely attributed to plaintiff concerning his alleged association with the Northern Structure prison gang and/or other prison or street disruptive groups.

This appeal, submitted on August 3, 2009, was denied on FLR on September 16, 2009, and on SLR on December 2, 2009. It was denied – and hence administratively exhausted – on Third Level Review (TLR) on May 4, 2010. See also Clark Decl., Ex. A; Zamora Decl., ¶ 9, Ex. A (ECF No. 41-3 at 3, 5); and Briggs Decl., ¶ 9, Ex. A (ECF No. 62-3 at 3-5).

No party asserts that this appeal is relevant to the claims in this action.

• Appeal Log No. CSP-S-10-00249 (Clark Decl., Ex. G):

In this appeal, plaintiff requested that his gang validation "be overturned" and that the "meritless sources be removed from [his] C-File." Plaintiff stated that on November 13, 2009, Officer Sandoval (not a defendant) delivered a Form 128-B-2 indicating the plaintiff's October 2009 validation had been confirmed.[10] Plaintiff challenged the content and reliability of each source item relied upon for his validation, including the January 15, 2009 Form 128-B prepared by defendant Whitfield.

This appeal, submitted on November 24, 2009, was denied in an Informal Level Response on December 21, 2009, and denied on FLR on March 29, 2010. The appeal was partially granted on SLR on June 1, 2010, and then denied – and hence administratively exhausted – on TLR on October 1, 1010. See also Clark Decl., Ex. A; Zamora Decl., ¶ 10, Ex. A (ECF No. 41-3 at 3, 5); and Briggs Decl., ¶ 10, Ex. A (ECF No. 62-3 at 3-5).

---

[10] Plaintiff was initially validated as an associate of the Northern Structure prison gang on October 23, 2009. See Pl. Ex. B, ECF No. 67 at 46.

VI.  ANALYSIS

    A.  Defendant Alcaraz

Defendant Alcaraz moves for summary judgment on the ground that the only appeal challenging his conduct, Appeal Log No. CSP-S-09-00235, did not proceed past FLR.  Although acknowledging that plaintiff exhausted two other appeals, Appeal Log No. CSP-S-09-01878 and Appeal Log No. CSP-S-10-00249, Alcaraz contends that neither appeal involved his alleged conduct.

Plaintiff responds that further administrative review of Appeal Log No. CSP-S-09-00235 was effectively unavailable to him due to the threat of retaliation against plaintiff should he further pursue the appeal, and that his claims in Appeal Log No. CSP-S-10-00249 (which challenged plaintiff's validation) demonstrate his fear of retaliation in pursuing Appeal Log No. CSP-S-09-00235.

    1.  Appeal Log No. CSP-S-09-00235

Plaintiff asserts that when he was interviewed by Lt. Bond, Alcaraz' supervising officer, on March 5, 2009, concerning this appeal, plaintiff "was threatened with retaliation if he pursued his appeal to exhaustion."  ECF No. 48 at 10.  Plaintiff explains:

> On March 5, 2009, I had an interview with Lieutenant (Lt.) R. L. Bond regarding the First Level Review (FLR) of my appeal against Alcaraz.  []  And at this time Lt. Bond was assigned as the Institutional Gang Investigator (IGI) and Alcaraz's and Whitfield's Supervising Officer.  At the close of my interview with Lt. Bond, she specifically told me:  "There's no need to continue your 602, we wouldn't want something like this to happen again.  I'll take care of it and make sure Alcaraz doesn't bother you again."  I interpreted this statement as a direct threat of retaliation, meaning, should I "continue" my "602" (i.e. exhaust administrative remedies), I would be placed back on CSW.

> That after my interview with Lt. Bond, I sought out advice from more experienced prisoners on how to proceed with my appeal and the consensus was the same; should I continue to "602" IGI, they will retaliate against me by placing me back on CSW, validate me and segregate me indeterminately and/or plant evidence on me.

> That based on the retaliation I suffered from Alcaraz for not providing information; being placed on CSW; CSW being torturous; suffering mental and physical injuries while on CSW; prison officials using CSW as a retaliatory tool; the retaliation I suffered from Whitfield for exercising my right to be free from self-

14

incrimination; the direct threat I received from Lt. Bond; the fact that Alcaraz, Whitfield and Bond work close together in the S/I unit; and the general consensus of the prison population, I genuinely feared retaliation from Alcaraz; and these circumstances rendered administrative remedies effectively unavailable.

Pl. Decl. at ¶¶ 8-11 (fns. omitted), ECF No. 48 at 25-6.

It is undisputed that Appeal Log No. CSP-S-09-00235, submitted by plaintiff on January 22, 2009, the day after he was released from the ASU following the challenged CSW, reached only FLR, when it was denied on March 12, 2009. The parties dispute whether further administrative remedies were effectively unavailable to plaintiff based on threats of retaliation.

Plaintiff relies on Turner v. Burnside, supra, 541 F.3d 1077, in addition to Kaba v. Stepp, 458 F.3d 678, 684 (9th Cir. 2006) (the fact that a prisoner filed other appeals when he alleges fear of retaliation if he pursued the subject appeal is not, ipso facto, dispositive whether the grievance system was effectively available on the subject grievance); and Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007) (assessment whether defendants' alleged threats deterred plaintiff from pursuing the subject grievance must consider timing and sequence of alleged conduct). Defendant relies, inter alia, on Jefferson v. Perez, Case No. 2:09-cv-3008 GEB CKD P, 2012 WL 5706299, *5 (E.D. Cal. Nov. 14, 2012) (rejecting plaintiff's contention that administrative remedies were effectively unavailable to him" because "[p]laintiff filed numerous grievances during the relevant time period . . . , many of [which] . . . specifically involved alleged improper conduct of the defendants . . . .").

Applying the two-pronged analysis set forth in Turner, this court must initially determine whether plaintiff has demonstrated that he was "actually deterred" from pursuing Appeal Log No. CSP-S-09-00235, for the reasons he states. Plaintiff avers that, after his interview with Lt. Bond, (in which she allegedly stated, "There's no need to continue your 602, we wouldn't want something like this to happen again"), and after speaking with "more experienced prisoners," plaintiff was persuaded that further pursuit of this appeal would result in official retaliation in the form of placing plaintiff back on CSW or in the SHU; validating plaintiff as a gang associate; or planting evidence on plaintiff. Plaintiff asserts that his fears of retaliation were reasonable based on his traumatic experience on CSW, the prior malicious conduct of Alcaraz and Whitfield, and

15

the fact that Alcaraz, Whitfield and Bond worked closely together.

In assessing whether the evidence supports a reasonable inference of threatened retaliation, the court begins with plaintiff's March 5, 2009 interview with Lt. Bond. On that date, plaintiff was also awaiting a decision on his second-filed grievance, Appeal Log No. CSP-S-09-00374, which challenged Whitfield's conduct at plaintiff's January 15, 2009 ICC meeting. On March 18, 2009, plaintiff received the March 12, 2009 FLR denial in Appeal Log No. CSP-S-09-00235. He then had 15 days, or until April 2, 2009, to request SLR. Within this period, on March 26, 2009, plaintiff was interviewed by Appeals Coordinator Moore concerning his second-filed grievance, and Moore showed plaintiff the Form 128-B authored by Whitfield. On April 2, 2009, the last day for plaintiff to timely submit a request for SLR in Appeal Log No. CSP-S-09-00235, plaintiff received the March 26, 2009 Second Level denial in Appeal Log No. CSP-S-09-00374, with a notice that he had 15 days, or until April 17, 2009, to request Third Level Review in that grievance.

Plaintiff did not further pursue either Appeal Log No. CSP-S-09-00235 or Appeal Log No. CSP-S-09-00374. Rather, on April 10, 2009, plaintiff submitted a second grievance against defendant Whitfield, Appeal Log No. CSP-S-09-00928, in which plaintiff asserted that the Form 128-B authored by Whitfield was "fictitious," contained "flat out lies," and was written in "reprisal" for plaintiff filing Appeal Log No. CSP-S-09-00374.

Thus, rather than pursue his appeal against Alcaraz or his first appeal against Whitfield, plaintiff submitted a new appeal alleging retaliatory conduct by Whitfield. Plaintiff's willingness to make the bold allegations in Appeal Log No. CSP-S-09-00928 undermines his claim that he feared retaliation if he further pursued his appeal against Alcaraz, particularly because plaintiff acknowledges that Alcaraz, Whitfield and Bond worked closely together. Filing two appeals against Whitfield, about matters that allegedly involved the ICC meeting during plaintiff's CSW, is inconsistent with plaintiff's alleged fear of retaliation in the form of a return to CSW. These circumstances do not support the subjective component of the Turner analysis, viz., that the alleged threat made by Lt. Bond "actually deterred" plaintiff from further pursuing his appeal against Alcaraz.

Furthermore, plaintiff fails to demonstrate that Lt. Bond's alleged statement, together with plaintiff's CSW experience and the opinions of other inmates, would "deter a reasonable inmate of ordinary firmness" from pursuing his claim against Alcaraz. The allegations in plaintiff's appeal against Alcaraz were specific, detailed and accusatory, as were both of plaintiff's appeals against Whitfield. The court finds that a reasonable inmate of ordinary firmness would have pursued all of these allegations to conclusion.

On this basis, the court finds that plaintiff has failed to present evidence demonstrating a material factual dispute in support of his contention that, due to fear of retaliation, further administrative remedies were effectively unavailable to him in his appeal against Alcaraz (Appeal Log No. CSP-S-09-00235).

### 2. Appeal Log No. CSP-S-10-00249

In a further effort to demonstrate his subjective fear of reprisal in March and April 2009, plaintiff states that, "'[i]n a desperate cry for help,' on June 14, 2010, Barron reached out to the Director's Level of Review claiming that his validation was a 'reprisal' for the appeals he wrote against Alcaraz and Defendant Whitfield," citing "Barron's Decl. at ¶ [blank], Ex. D, at pp. 19-20." ECF No. 48 at 10. Review of plaintiff's declaration and exhibits indicates that plaintiff is referring to his communications in support of Appeal Log No. CSP-S-10-00249. See ECF No. 48 at 75-6.[11] This appeal, submitted by plaintiff in November 2009, was a comprehensive challenge to the reliability of the source items used to validate plaintiff. The only reference to Alcaraz is plaintiff's contention, in expressing dissatisfaction with the SLR, that his validation was a reprisal for the appeals plaintiff filed against both Alcaraz and Whitfield. Id. at 76. Plaintiff explained

---

[11] The court notes, with frustration, that defendants failed to provide all of the formal documents generated pursuant to each of plaintiff's appeals. Defendants provided only plaintiff's original appeals, and any further writings placed directly on those original 602 Forms. Defendants' only other evidence, plaintiff's tracked appeals log, provides no substance whatsoever. Only plaintiff has provided the formal First, Second and Third Level decisions responsive to each grievance. Because a given appeal may be clarified over the course of interviews and official written responses as the appeal moves through the process of administrative exhaustion, it is imperative that the court be provided all of this evidence by defendants, who have ready access to it. In the present case, due to plaintiff's extensive exhibits, there is no prejudice caused by defendants' failure. However, in the future, defendants shall provide all necessary information.

that he had "requested that both officers be fired which sparked retaliation." Id. Alcaraz is not further mentioned. The allegation that plaintiff's validation is attributable in part to Alcaraz' alleged retaliation against plaintiff, even if viewed as exhausted in Appeal Log No. CSP-S-10-00249, does not reflect the same allegations plaintiff made against Alcaraz in Appeal Log No. CSP-S-09-00235. Pursuant to his first appeal, plaintiff requested that defendant Alcaraz "be relieved of his duties" for falsely accusing plaintiff of swallowing contraband, and for placing plaintiff on CSW, because of plaintiff's race; and also placed plaintiff on CSW in retaliation for plaintiff refusing to provide information about other inmates. These are not the same allegations plaintiff made in his gang validation challenge, Appeal Log No. CSP-S-10-00249. Therefore, Appeal Log No. CSP-S-10-00249 cannot be construed as exhausting plaintiff's claims against Alcaraz as set forth in Appeal Log No. CSP-S-09-00235. Moreover, plaintiff's limited allegations against Alcaraz in Appeal Log No. CSP-S-10-00249, in November 2009, do not demonstrate that plaintiff feared retaliation from Alcaraz for pursuing Appeal Log No. CSP-S-09-00235 in May to June 2009.

For these reasons, the court finds that plaintiff has failed to adduce evidence supporting his contention that he should be excused from the administrative exhaustion requirement in his only appeal against Alcaraz (Appeal Log No. CSP-S-09-00235). Accordingly, plaintiff's claims against Alcaraz should be dismissed.

B. Defendant Whitfield

Defendant Whitfield moves for summary judgment on the ground that plaintiff did not exhaust either Appeal Log No. CSP-S-09-00374 or Appeal Log No. CSP-S-09-00928, the only appeals that directly challenged Whitfield's conduct. Defendant contends further that the only exhausted appeal referencing Whitfield, Appeal Log No. CSP-S-10-00249, did not include the claims against Whitfield contained in the Third Amended Complaint. Plaintiff responds that Appeal Log No. CSP-S-09-00374 was exhausted through the Second Level, which was sufficient; Appeal Log No. CSP-S-09-00928 should be excused from exhaustion; and the exhaustion of Appeal Log No. CSP-S-10-00249 adequately encompassed and exhausted plaintiff's claims against Whitfield.

1    <u>1. Appeal Log No. CSP-S-09-00374</u>

2        Plaintiff contends that the exhaustion of Appeal Log No. CSP-S-09-00374 through SLR

3    satisfied the requirement of administrative exhaustion because the appeal involved a "serious

4    disciplinary action" within the meaning of 15 C.C.R. § 3084.7(b)(1). FLR was bypassed for this

5    appeal. The cited regulation provides:

6            A second level of review shall constitute the department's final
             action on appeals of disciplinary actions classified as
7            "administrative" as described in section 3314, or of minor
             disciplinary infractions documented on the CDC Form 128-A (rev.
8            4-74), Custodial Counseling Chrono, pursuant to section
             3312(a)(2),[12] and shall exhaust administrative remedy on these
9            matters.

10   Cal. Code Regs., tit. 15, § 3084.7(b)(1). Plaintiff contends that the information set forth in the

11   Form 128-B completed by defendant Whitfield on January 15, 2009, while appropriate for

12   documenting an inmate's alleged gang activity, should also have been set forth in a Form 128-A

13   "Counseling Chrono" because the underlying alleged misconduct was no more than an

14   "administrative violation." <u>See</u> ECF No. 67 at 10-1. So construed, plaintiff argues, his grievance

15   challenged the putative Form 128-A Whitfield should have filed and was therefore exhausted on

16   SLR. Cal. Code Regs., tit. 15, § 3084.7(b)(1).

17       This argument lacks merit. In this appeal, plaintiff requested that defendant Whitfield "be

18   relieved of his duties" due to his alleged conduct on January 15, 2009, which allegedly included

19   Whitfield's assertion that he would designate plaintiff's refusal to have his tattoos photographed

20   as a point toward plaintiff's gang validation. The appeal asserts that Whitfield's "blatant displays

21

22   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [12] Cal. Code Regs., tit. 15, § 3312(a)(2) provides:

23       (a) Inmate misconduct shall be handled by:

24       . . . (2) Custodial Counseling Chrono. When similar minor
         misconduct recurs after verbal counseling or if documentation of
25       minor misconduct is needed, a description of the misconduct and
         counseling provided shall be documented on a CDC Form 128-A,
26       Custodial Counseling Chrono. A copy of the completed form shall
         be provided to the inmate and the original placed in the inmate's
27       central file. Disposition of any contraband involved shall be
         documented in the CDC Form 128-A.

28

of corrupt conduct shall not be tolerated," and that Whitfield "needs to be held accountable." ECF No. 62-2 at 13, 16. The "action requested" by this appeal was the dismissal of Whitfield, not the withdrawal of the alleged validation point or the "administrative violation" on which it was based.

Significantly, plaintiff did not become aware that Whitfield had prepared a Form 128-B until shown it by Appeals Coordinator Moore on March 26, 2009. Thus, it cannot be said that plaintiff initiated this appeal to challenge Whitfield's completed Form 128-B, or the validation point attributed to the report. The appeal sought nothing other than Whitfield's dismissal. Moreover, it is not for this court to determine, in the first instance, how to classify alleged inmate conduct, or to designate which form should be used for that purpose.

For these reasons, the court finds no material dispute refuting defendant's contention that plaintiff failed to administratively exhaust his first appeal against defendant Whitfield (Appeal Log No. CSP-S-09-00374) because he obtained only SLR.

2. Appeal Log No. CSP-S-09-00928

Plaintiff contends that this appeal should be excused from exhaustion. Plaintiff avers that the FLR was belatedly returned to him; that he was thereafter placed on CSW for the second time; and that, after his release from CSW, he twice attempted to submit a request for SLR but his requests were denied.

Plaintiff first contends that his appeal was not promptly processed. Review of the appeal demonstrates that plaintiff signed and submitted it on April 10, 2009. ECF No. 62-2 at 18. The date stamp on the bottom of the appeal indicates that it was received on April 20, 2009. Id. The appeal was assigned to FLR on April 21, 2009, with a designated due date of June 2, 2009. Id. FLR was completed on May 20, 2009, and the appeal indicates that it was returned to plaintiff on June 8, 2009. Id.

However, plaintiff contends that he did not receive the FLR until July 3 or 4, 2009. Shortly thereafter, on July 7, 2009, plaintiff was again placed on CSW. Plaintiff asserts that he did not have access to his legal materials, including the FLR, until September 16, 2009, when he was released from CSW and then submitted a request for SLR. The request was designated

"received" on September 18, 2009, and returned to plaintiff on September 24, 2009 with directions how he could to proceed. Plaintiff again submitted a request for SLR on October 12, 2009, but the request was returned on October 26, 2009 as untimely. See Pl. Decl. ¶ 1, ECF No. 67 at 30-1; Pl. Ex. A, id. at 41-4.

Review of the appeal and plaintiff's written attempts to submit it for SLR demonstrate that the initial dispute whether plaintiff received the FLR on June 8, 2009, or July 3 or 4, 2009, is not material. Even assuming the truth of plaintiff's allegations concerning this matter, plaintiff was, on September 24, 2009, accorded the opportunity to overcome the delay in his request for SLR. When, on this date, CSP-SOL Appeals Coordinator Moore returned plaintiff's first request for SLR, he provided the following explanation and opportunity:

> There has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal with no explanation of why you did not or could not file in a timely fashion. Time limits expired per CCR 3084.6(c). Therefore, if you would like to pursue this matter further, you must submit an explanation and supporting documentation explaining why you did not or could not file your appeal timely.
>
> You were placed in Administrative Segregation Unit (ASU) on 7/7/09. Allowable property is issued after initial Institutional Classification Committee, which would be 7/16/09. Have the ASU property officer sign that you were denied your property. If not, appeal will be rejected for untimely filing.

ECF No. 67 at 42. Plaintiff's inadequate response, received by the Appeals Coordinator on October 22, 2009, provided in pertinent part:

> The ASU property officer "did not" deny me my allowable property such as hygiene. . . . But I wasn't given my "legal work" at that time. I didn't get my legal work until September 16, 2009. . . . Legal property officer Raghunath acknowledges that he recently brought me a 602 on Whitfield but doesn't want to sign. He said he will call you to confirm.

ECF No. 67 at 43. On October 26, 2009, the Appeals Coordinator informed plaintiff that the time limits had expired under § 3084.6(c), and plaintiff's appeal was "rejected due to untimely filing." Id. at 44.

In support of his contention that he was prevented from exhausting this appeal through no fault of his own, plaintiff relies on the cases summarized by the Ninth Circuit in Albino:

We have considered in several PLRA cases whether an administrative remedy was "available." In <u>Nunez v. Duncan</u>, 591 F.3d 1217 (9th Cir. 2010), we held that where a prison warden incorrectly implied that an inmate needed access to a nearly unobtainable prison policy in order to bring a timely administrative appeal, "the Warden's mistake rendered Nunez's administrative remedies effectively unavailable." In <u>Sapp v. Kimbrell</u>, 623 F.3d 813 (9th Cir. 2010), we held that where prison officials declined to reach the merits of a particular grievance "for reasons inconsistent with or unsupported by applicable regulations," administrative remedies were "effectively unavailable." In <u>Marella v. Terhune</u>, 568 F.3d 1024 (9th Cir. 2009) (per curiam), we reversed a district court's dismissal of a PLRA case for failure to exhaust because the inmate did not have access to the necessary grievance forms within the prison's time limits for filing a grievance. We also noted that Marella was not required to exhaust a remedy that he had been reliably informed was not available to him.

<u>Albino</u>, 747 at 1173 (page citations omitted). In <u>Albino</u>, the Ninth Circuit held that the administrative remedies at the subject jail were not, as a practical matter, available.

None of these cases supports plaintiff's assertion that he was prevented from exhausting his appeal through no fault of his own. Rather, as demonstrated by the responses of Appeals Coordinator Moore, plaintiff merely needed to demonstrate, in writing, that he had been without access to his legal property until September 18, 2009. Plaintiff not only failed to do so, but waited nearly a month to inform Moore that he was unable to make the requisite showing.

For these reasons, the court finds no material dispute refuting defendant's affirmative defense that plaintiff failed to administratively exhaust his second appeal against defendant Whitfield (Appeal Log No. CSP-S-09-00928).

3. <u>Appeal Log No. CSP-S-10-00249</u>

Plaintiff's final argument in support of his contention that he exhausted his retaliation claim against defendant Whitfield is premised on the undisputed exhaustion of Appeal Log No. CSP-S-10-00249, in which plaintiff challenged the reliability of each of the six source items used to validate plaintiff. These source items include Whitfield's January 15, 2009 Form 128-B. <u>See</u> ECF No. 62-2 at 36 (Source Item 5). In this appeal, plaintiff challenged the reliability of the source item prepared by Whitfield on the following grounds:

"Staff Information" Dated 01-15-09/CDC 128-B." This source does not "reasonably" indicate gang activity stipulated in 3378(c)(8)(E) [(2009)]. On 01-15-09 I never stated "no comment"

22

to S&I Officer J. Whitfield but instead detailed our conversation on a 602. However, should I have chosen to state "no comment," it would be well within my rights to do so, i.e. DOM 51080.1; my Cal. Con. Art. (I), Sec. 15; and my U.S. Con. 5th Amend. which states: "No citizen shall be compelled (threatened with 128-B, validation, etc.) to testify/bear witness against himself." I am further protected by my "Miranda" right to remain silent during any interview by any law enforcement officer. Moreover, J. Whitfield relies on some obsolete "kite' found July 07, 2006 by some anonymous means. I was not even in prison at this time and this "kite" has no relevancy to me. Hence this "staff information" violates my rights on numerous levels and does no reasonably indicate gang activity stipulated in 3378(c)(8)(E). It should not be used as a source.

ECF No. 62-2 at 36. All six sources were found reliable at each level of administrative review. See ECF No. 48 at 62-78.

This appeal contains the following additional allegations against Whitfield. As earlier noted, in expressing dissatisfaction with the SLR, plaintiff asserted that his validation was a reprisal for the appeals plaintiff had filed against both Whitfield and Alcaraz. Id. at 76. Plaintiff further explained:

When the validation investigation took place on 07-07-09 [plaintiff's second placement on CSW] I did not have enough sources [for validation] to suffice their retribution. I only had (2) sources prior to IGI's goal to validate me by J. Whitfield from my first 602 against him which resulted in a second 602 against him which resulted into this validation process against me. Because I was requesting that (2) CO's be fired this validation process violated all my due process rights, evidence has been falsified . . . .

Id.

The court finds that these allegations, liberally construed and taken together, reflect the same allegations that plaintiff made against Whitfield in Appeal Log No. CSP-S-09-00235. Although the action requested by Appeal Log No. CSP-S-10-00249 was to overturn plaintiff's validation[13], while the action requested in Appeal Log No. CSP-S-09-00235 was that Whitfield be relieved of his duties, the underlying allegations are the same – that Whitfield, acting in

---

[13] Plaintiff requested "[t]hat my validation be overturned, these meritless sources be removed from my C-File and I be returned to the general population." ECF No. 62-2 at 33.

retaliation against plaintiff for exercising his right to remain silent, issued a false Form 128-B that served as a source item in support of plaintiff's gang validation. The consistency of these allegations over time demonstrate administrative exhaustion of plaintiff's claim before this court that defendant Whitfield retaliated against plaintiff "in violation of the First Amendment for the exercise of [plaintiff's] Fifth Amendment right against self-incrimination." ECF No. 39 at 3.

For these reasons, defendant Whitfield's motion for summary judgment premised on plaintiff's alleged failure to administratively exhaust his claims against Whitfield should be denied.

C. Defendants Swarthout and Cate

Plaintiff contends that his Appeal Log No. CSP-S-09-00235 supports his claims against supervisors Swarthout and Cate on plaintiff's challenges to the policies and procedures underlying CSW. Although the appeal did not name these defendants (none of plaintiff's appeals named these defendants), that omission would not necessarily be fatal. See Jones v. Bock, 549 U.S. 199, 219 (2007) ("exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances"). However, for the reasons previously discussed, even if Appeal Log No. CSP-S-09-00235 could reasonably be construed to include claims against these defendants, the appeal was not administratively exhausted. Accordingly, plaintiff's claims against defendants Swarthout and Cate must be dismissed.

VII. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. The motion for summary judgment filed by defendant Alcaraz, ECF No. 41, premised on plaintiff's alleged failure to exhaust his administrative remedies, should be granted.

2. The motion for summary judgment filed by defendants Whitfield, Swarthout and Cate, ECF No. 62, premised on plaintiff's alleged failure to exhaust his administrative remedies, should be granted as to defendants Swarthout and Cate, and denied as to defendant Whitfield.

3. Plaintiff's claims in this action against defendants Alcaraz, Swarthout and Cate, should be dismissed without prejudice.

////

4.  This action should proceed only on plaintiff's First Amendment retaliation claim against defendant Whitfield.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Due to exigencies in the court's calendar, no extensions of time will be granted.**  A copy of any objections filed with the court shall also be served on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 5, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE