UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RAUL BARRON, | No. 2:11-cv-2678 JAM AC P |
| Plaintiff, | |
| v. | ORDER |
| A. ALCARAZ, et al., | |
| Defendants. | |

I. <u>Introduction</u>

Plaintiff is a state prisoner, currently incarcerated at Pleasant Valley State Prison, who proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. §1983. This action proceeds on plaintiff's Third Amended Complaint (TAC), ECF No. 32, on plaintiff's First Amendment retaliation claim against defendant Correctional Officer J. Whitfield. Plaintiff alleges that, on January 15, 2009, during plaintiff's incarceration at California State Prison Solano (CSP-SOL), defendant Whitfield retaliated against plaintiff for the exercise of his Fifth Amendment right to remain silent, specifically, to be free from self-incrimination when plaintiff refused defendant's request to photograph his tattoos. Plaintiff alleges that, in retaliation, defendant issued a Chrono 128-B against plaintiff which contained false information and was relied on as a source item in support of plaintiff's subsequent gang validation and related placement in CSP-SOL's Segregated Housing Unit (SHU).

Presently pending is plaintiff's motion to compel defendant Whitfield to provide further responses to plaintiff's discovery requests, filed November 2, 2015. ECF No. 77. The discovery deadline expired on October 30, 2015; the dispositive motion deadline was vacated pending a decision on the instant discovery dispute. See ECF Nos. 74, 83. Defendant filed an opposition to plaintiff's discovery motion, ECF No. 80; plaintiff filed a reply, ECF No. 81. For the reasons that follow, plaintiff's motion is granted in part and denied in part. In addition, the court sets a new dispositive motion deadline of October 14, 2016.

II. Background

Central to the instant discovery disputes are the circumstances in which plaintiff allegedly asserted his Fifth Amendment rights to defendant Whitfield. The district judge found that these circumstances, as alleged in the Second Amended Complaint (SAC), were tantamount to a "custodial interrogation" triggering plaintiff's constitutional right to remain silent and to be free from punishment for that silence. See Order filed March 12, 2013, ECF No. 29 at 7-8.

As now alleged in the TAC, on January 15, 2009, plaintiff was on Contraband Surveillance Watch (CSW) in CSP-SOL's Administrative Segregation Unit (ASU).[1] While he remained shackled, plaintiff was escorted to a meeting of the Institutional Classification Committee (ICC), comprised of seven correctional officials, where plaintiff was directed to sit on a chair turned backwards under the watch of a correctional escort who remained standing. TAC at 9. The allegations in support of plaintiff's CSW/ASU placement were read aloud. Defendant Whitfield, seated to plaintiff's immediate right, asked plaintiff if he had any tattoos. Plaintiff replied, "Yes." Id. at 10. As set forth in the TAC, id. at 10-1, ¶¶ 43-50 (with minor edits):

> ¶ 43. . . . Whitfield then asked: "May I take a picture of them?" Barron responded: "They're already in your file." Whitfield replied: "That's not what I'm asking, I'm asking if 'I' may take a picture of them?" Barron then asked: "Do I have a right to say 'No'?" Where Whitfield replied: "Yeah, I'll give you that right." Barron exercised that right by stating: "Ok then, No." Whitfield

---

[1] Plaintiff's claim that he was placed on CSW for improper reasons was dismissed for failure to exhaust administrative remedies. See Findings and Recommendations filed Marcy 6, 2015, ECF No. 69 at 14-8 (recommending dismissal of plaintiff's claims against defendant Alcaraz), adopted by the district judge on June 10, 2015, see ECF No. 72.

then accused Barron of using Northern Structure (N.S.) [gang] policy and began to taunt Barron in an attempt to induce him to share information. Whitfield said: "Come on what number is it, you know what number I'm talking about. . . ." Barron then exercised his Fifth Amendment right by stating: "You mean my Fifth Amendment right to be free from self-incrimination?" In response, Whitfield threatened to give Barron one point toward validation and wrote a report containing false information.

¶ 44. Indeed, in Whitfield's [Chrono B-128] report, he wrote: "I attempted to interview inmate Barron . . . regarding his involvement with the Northern Structure . . . prison gang. Inmate Barron stated: "I have no comment."

¶ 45. Instead of respecting Barron's rights to refrain from speaking and to be free from self-incrimination, Whitfield admits he illegally persisted by writing: "Barron was advised he was abiding by the rules and regulations of the Northern Structure . . . prison gang . . . and still refused to be interviewed."

¶ 47. Further, Whitfield wrote: "At no time did inmate Barron state, 'I am exercising my . . . Fifth Amendment right[].'" Thus, Whitfield was well aware of Barron's constitutional right to be free from self-incrimination, however, Whitfield willfully and maliciously exhibited reckless disregard for Barron's constitutional right guaranteed by the Fifth Amendment.

¶ 48. In addition, because Barron refused to allow Whitfield to take pictures of his tattoos and exercised his Fifth Amendment right, Whitfield willfully and intentionally and maliciously retaliated against Barron by writing a report containing false information in that: (a) Barron never stated "No comment" [] and (b) Barron did assert his Fifth Amendment right []; and second, this report was used as one point toward validating Barron as a North Structure Associate and to place Barron in a SHU for an indeterminate term[.]

¶ 49. Thus, Barron was and is being punished for exercising his constitutional rights to refrain from speaking and to be free from self-incrimination in violation of the First and Fifth Amendments of the U.S. Constitution.

¶ 50. Whitfield's retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline as silence is . . . nonviolent behavior and Barron is under no obligation to provide information.

In considering the same allegations set forth in the TAC, the district judge concluded that defendant Whitfield's alleged conduct constituted a custodial interrogation, for the following reasons, ECF No. 29 at 7-8:

A threshold issue is therefore whether . . . Defendant Whitfield's . . . attempts to interview Plaintiff were made during the course of a

custodial interrogation. The Ninth Circuit addressed this issue in the context of a Sherriff's Deputy questioning a county jail inmate. In Cervantes v. Walker, the guard found contraband during a routine search and engaged in "on the scene" questioning to determine the nature of the discovery. The interrogation took place in the jail library while the inmate was in the process of being moved to a different cell. 589 F.2d 424, 428 (9th Cir. 1978). In finding that the interrogation was not custodial, the Cervantes court reasoned that, in the prison context, determining whether there is a custodial interrogation is dependant upon whether there is change in the prisoner's surroundings that "results in an added imposition on his freedom of movement." Id.

> Therefore, the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him must be considered to determine whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting. Such a situation requires Miranda warnings.

Id. (internal citations omitted).

Plaintiff alleges that he was already on CSW in the Administrative Segregation Unit when Defendant Whitfield asked Plaintiff if he could take photos of his tattoos; this interview allegedly took place immediately after Plaintiff had been "read outloud [sic] the allegations of his CSW placement." SAC ¶ 19. As discussed below, Plaintiff alleges that he was under close scrutiny, shackled, and segregated from the general population while on CSW. Id. ¶ 16. Plaintiff alleges that after he told Defendant Whitfield he could not take any photos, Defendant Whitfield "accused Plaintiff of using Northern Structure policy" and "taunted" Plaintiff in an attempt to induce him to share information. Plaintiff alleges that he then asserted his Fifth Amendment right against self-incrimination. In response, Defendant Whitfield allegedly threatened to give Plaintiff one "point toward validation." Id. ¶ 19.

The circumstances alleged by Plaintiff, since he was on CSW at the time, show a "restriction of his freedom over and above that in his normal prisoner setting" and weigh heavily in favor of classifying the interview as a "custodial interrogation." See Cervantes, 589 F.2d at 428. Plaintiff was also being questioned about information related to gang affiliations, which falls within the ambit of information protected by the right against self-incrimination. Because this was a custodial interrogation based on Plaintiff's allegations, Plaintiff had a constitutional right to be silent and to not be punished for that silence.

////

////

////

4

III. Discussion

    A. <u>Instant Discovery Motion</u>

When plaintiff filed his discovery motion, he had received no responses from defendant to Plaintiff's First Request for Admissions, <u>see</u> ECF No. 77 at 5-8; Plaintiff's First Request for Interrogatories, <u>see</u> <u>id.</u> at 9-11; or Plaintiff's First Request for Production of Documents, <u>see</u> <u>id.</u> at 12-14. Plaintiff served these discovery requests by mail on August 27, 2015. By letter dated October 5, 2015, plaintiff informed defendant's counsel that he would extend the deadline for defendant's responses to October 25, 2015. <u>See</u> ECF No. 77 at 17. It was plaintiff's understanding that, according to the Federal Rules, defendant had 30 days to respond to his discovery requests (citing Fed. R. Civ. P. 33, 34 and 36), plus an additional 3 days because plaintiff had served his requests by mail (citing Fed. R. Civ. P. 6(d)). According to plaintiff's calculations, defendant had 33 days from August 27, 2015 – or until September 29, 2015 – to serve his responses. In his letter dated October 5, 2015, plaintiff accorded defendant, sua sponte, 20 additional days, to October 25, 2016. <u>Id.</u> On October 27, 2015, in deference to the October 30, 2015 discovery deadline in this action, plaintiff signed, mailed and served his motion to compel.

Later in the day on October 27, 2015, plaintiff received defendant's responses. <u>See</u> ECF No. 78 at 4. Plaintiff informed the court that "[d]efendant objected to all 13 interrogatories and all 12 requests for production of documents." <u>Id.</u> Plaintiff requested and obtained additional time to review defendant's responses and to file a supplemental brief in support of his motion. <u>See</u> ECF Nos. 78, 79. Defendant filed his opposition to plaintiff's motion on November 23, 2015, wherein he contends that his responses were timely served and his responses and objections proper. <u>See</u> ECF No. 80. In reply (also construed as plaintiff's supplemental brief), plaintiff asserts that defendant's responses were untimely and that most of his responses and objections improper. <u>See</u> ECF No. 81.

    B. <u>Deadline for Serving Discovery Responses</u>

Defendant's responses were timely served. As noted by defendant, the applicable response period was set by the court in the Discovery and Scheduling Order filed June 29, 2015.

See ECF No. 74. That order provides in pertinent part that "[r]esponses to written discovery requests shall be due forty-five days after the request is served." Id. at 4:25-6. Plaintiff served his discovery requests on August 27, 2015; forty-five days later was Sunday, October 11, 2015. Pursuant to Rule 6(a)(1)(C), Federal Rules of Civil Procedure, if the last day of a period falls on a weekend or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Hence, the forty-five period ended on Monday, October 12, 2015. Additionally, because plaintiff's discovery requests were served by mail, defendant had an additional three days to serve his responses. See Fed. R. Civ. P. 6(d). Thus, defendant was required to serve his responses no later than October 15, 2015. Defense counsel avers that she served defendant's responses by mail on October 14, 2015. See Declaration of Deputy Attorney General Janet N. Chen (Chen Decl.) ¶ 3, ECF No. 80 at 4; and Df. Ex. B, id. at 48 (certificate of service). Defendant's responses were therefore timely served. See Fed. R. Civ. P. 5(b)(2)(C) (service by mail is complete upon mailing).[2] Accordingly, plaintiff's contention that defendant's objections are waived due to the alleged untimeliness of his responses is without merit.

### C. Discovery Disputes

The pertinent relevance standard is established by Federal Rule of Civil Procedure 26(b)(1) (as amended eff. Dec. 1, 2015), which provides:[3]

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

---

[2] As plaintiff suggests, the delay in his receipt of defendant's responses may have been due to the size of the box they were mailed in. See Barron Decl. ¶ 12, ECF No. 78 at 4.

[3] Limitations to discovery are set forth in Federal Rule of Civil Procedure 26(b)(2)(C) (as amended eff. Dec. 1, 2015), which provides:
> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>    (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>    (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>    (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

6

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In opposition to plaintiff's motion, and anticipation of plaintiff's reply, defendant asserts, ECF No. 80 at 2-3 (citing Chen Decl. ¶ 3):

> [T]o the extent that Plaintiff will argue that Defendant's responses were insufficient, plaintiff's argument will fail. Defendant asserted objections to all of Plaintiff's requests but also, without waiving those objections, responded to all of Plaintiff's interrogatories, with the exception of interrogatory numbers 4 and 7, to which Defendant was unable to respond based on the asserted objections. (Chen Decl. ¶ 3.) With regard to Plaintiff's requests for production of documents, Defendant produced seventy-nine pages of responsive documents. (Id.) For requests to which Defendant did not have any responsive documents in his possession, custody, or control, Defendant so stated. (Id.) The Court should therefore deny Plaintiff's motion to compel further discovery responses[.]

Defendant has submitted copies of his discovery responses, excluding the produced documents. See ECF No. 80 at 20-47.

### 1. Requests for Admission[4]

Plaintiff contends that defendant's objections to his Requests for Admission are improper for the following reasons: (1) in response to Request for Admission Nos. 2-7, defendant "makes denials, then points to evidence which negates them;" (2) in response to Request for Admission Nos. 8-10, defendant is "evasive in claiming he does not 'recall;'" (3) in response to Request for Admission Nos. 12-15, 17 and 32, defendant improperly objects on the grounds "assumes facts not in evidence," "calls for legal conclusion" and "incomplete hypothetical;" (4) in response to

---

[4] Rule 36, Federal Rules of Civil Procedure, provides in pertinent part that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). If the responding party does not admit the matter, his or her answer "must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it," and any "denial must fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4). "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Id. Any objection to a request must state the grounds for objection. Fed. R. Civ. P. 36(a)(5).

7

Request for Admission Nos. 15, 17 and 26, defendant improperly asserts that he "is without sufficient information or knowledge to admit or deny," without stating that he made a reasonable inquiry; and (5) defendant did not respond to plaintiff's Request for Admission No. 32. See ECF No. 81 at 10-11.

        a.  Request for Admission Nos. 2-7

Plaintiff's challenge to defendant's responses to these requests – that defendant "makes denials, then points to evidence which negates them" – is without merit. Defendant appropriately objected to each request as "vague as to time" then, without waiving these objections, answered each request in the affirmative,[5] as documented in the March 26, 2009 Second Level Response to plaintiff's Appeal Log No. CSP-S-09-00374.[6]

        b.  Request for Admission Nos. 8-10

Plaintiff asserts that defendant's response to each of these requests is "evasive in claiming he does not 'recall.'" As with the previous requests, defendant appropriately asserted that these requests are "vague as to time" then, without waiving his objections, answered each request to the extent the requested information is reflected in the January 15, 2009 128-B Chrono.[7] Defendant's

---

[5] These contested requests posed follow-up questions to plaintiff's Request for Admission (RFA) No. 1, which defendant admitted, and which provides:
  RFA 1: On January 15, 2009, defendant attempted to interview Barron regarding possible involvement with the Northern Structure/Nuestra Raza (NS/NR) prison gang.
The ensuing contested requests, all of which defendant admitted, are as follows:
  RFA 2: Defendant asked Barron if he had any Tattoos.
  RFA 3: Barron said "yes."
  RFA 4: Defendant asked if he could take pictures of Barron's tattoos.
  RFA 5: Barron asked defendant if he had the right to say "no."
  RFA 6: Defendant said, "Yeah, I'll give you that right."
  RFA 7: Barron said "ok then, no."

[6] Plaintiff contends that he was shown the subject 128-B Chrono on March 26, 2009, when he was interviewed concerning his Appeal Log No. CSP-S-09-00374. In a separate appeal, Log No. CSP-S-09-00928, plaintiff alleged that Whitfield completed the subject 128-B Chrono in retaliation for, inter alia, plaintiff submitting his prior grievance, Log No. CSP-S-09-00374. See ECF No. 69 at 12.

[7] These requests, which defendant answered consistently with what he wrote in the subject 128-B Chrono, sought the following information:
  RFA 8: Defendant then accused Barron of abiding by the rules, regulations and/or policies of the NS/NR. [Defendant denies that he so accused plaintiff but states that he "advised" plaintiff that he was abiding by the rules and regulations of the Northern Structure/Nuestra Raza Prison gang, specifically, bond number 7.]
  RFA 9: Defendant than asked Barron which "number" of the Bonds he as following.
(continued…)

8

repeated statement, as in his responses to the prior requests, that he does not independently recall these matters must be taken at face value for present purposes and is therefore not evasive.

      c.  Request for Admission Nos. 12-15, 17 and 32

Plaintiff contends that defendant improperly objected to these requests on the grounds that they "assume facts not in evidence," "call for legal conclusions," and present "incomplete hypotheticals." Review of these requests and responses[8] demonstrates that defendant's objections and responses thereto were appropriate – without waiving his objections, defendant denied that any portion of the CDCR 128B he prepared on January 15, 2009 was false.

      d.  Request for Admission Nos. 15, 17 and 26

Plaintiff contends that defendant improperly asserted that he was "without sufficient information or knowledge to admit or deny" these requests without stating that he had made a reasonable inquiry. Plaintiff references Rule 36, which provides that, "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). However, review of these

////

////

---

  [Defendant denies that he asked plaintiff this question but states that he "advised" plaintiff that he was abiding by bond number 7.]
    RFA 10: Barron then exercised his Fifth Amendment right to remain silent. [Defendant denies that plaintiff exercised his Fifth Amendment right.]

[8] These requests are as follows:
    RFA 12: Because Barron did not actually state, "I have no comment" [in response to the subject CDCR 128B], this part of defendant's 128B is false.
    RFA 13: Because Barron exercised his Fifth Amendment right, the portion of defendant's 128B which states, "At no time did . . . Barron state, I am exercising my . . . Fifth Amendment right []," is false.
    RFA 14: Stating "no comment" is tantamount to exercising one's right to remain silent.
    RFA 15: Once a prisoner exercises his right to remain silent, all further questions must cease and desist.
    RFA 17: At the time he wrote his 128B, defendant was aware of Barron's Fifth Amendment right.
    RFA 32: Writing a false 128B which is used to validate and indeterminately segregate a prisoner because of his silence constitutes retaliation.

9

1  requests and defendant's objections and responses thereto[9] indicates that the latter were
2  appropriately made. Specifically, defendant's objections to Request Nos. 15 and 17 as "vague"
3  are sustained; defendant's objections to Request Nos. 17 and 26 to the extent that they call for
4  legal conclusions are also sustained, particularly given the generality of the requests, which
5  render "reasonable inquiry" impossible. Finally, in response to Request No. 26, defendant
6  provided a substantive response; without waiving his objections, defendant "admits that prison
7  officials are prohibited from retaliating against prisoners for exercising certain constitutional
8  rights. . . . [but] denies that he retaliated against Plaintiff . . . ." See ECF No. 80 at 37.

       e. Summary re: Requests for Admission

For these several reasons, plaintiff's motion to compel further responses to his Requests for Admission is denied in its entirety.

    2. Interrogatories[10]

Plaintiff seeks further responses from defendant to each of his thirteen interrogatories. Plaintiff's broad contention that defendant has waived all of his objections to all of plaintiff's interrogatories, see ECF No. 81 at 7, is without merit. The court addresses plaintiff's specific challenges.

       a. Interrogatory Nos. 1-5, 13

Defendant objected to each of these interrogatories on the ground that each also sought production of documents. Nevertheless, defendant produced documents responsive to

---

[9] These requests are as follows:
 RFA 15: Once a prisoner exercises his right to remain silent, all further questions must cease and desist.
 RFA 17: At the time he wrote his 128B, defendant was aware of Barron's Fifth Amendment right.
 RFA 26: Prison officials are prohibited from retaliating against prisoners for exercising their Constitutional rights, including the right to remain silent.

[10] Under the Federal Rules, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Each interrogatory must be answered by the party to whom it is directed or, if the party is a governmental agency, by an officer or agent, and each interrogatory, unless objected to, must be answered separately and fully in writing under oath. Fed. R. Civ. P. 33(b)(1), (3). Any objection must state the grounds for objection "with specificity." Fed. R. Civ. P. 33(b)(4).

Interrogatory Nos. 1 and 13, and stated that he had no documents responsive to Interrogatory Nos. 3 and 5 in his possession, custody or control. Defendant did not address the document request in Interrogatory No. 2, other than objecting to its form, but did provide an answer to the interrogatory. Defendant objected to Interrogatory No. 4 in its entirety "on the grounds that it is unintelligible, vague and ambiguous, overbroad as to time and subject matter, and irrelevant. . . ." ECF No. 80 at 23.

"Under Rule 33, a responding party *may* produce business records in response to an interrogatory; [however] there is no requirement that a responding [party] identify or produce documents relied upon in responding to an interrogatory, as Plaintiff argues. Fed. R. Civ. P. 33(d)." McMaster v. Spearman, 2014 WL 2712212, at *4 n.4, 2014 U.S. Dist. LEXIS 81621, at *12 n.4, Case No. 1:10-cv-01407 AWI SKO P (E.D. Cal. June 16, 2014) (original emphasis). Under the "business records option" of Rule 33:

> [I]If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

In response to Interrogatory Nos. 1 and 13 defendant produced, respectively, a current job description for CDCR correctional officers, and plaintiff's January 15, 2009 ICC Classification Chrono. In response to Interrogatory No. 13, defendant stated that "[w]ithout a more specific request, Defendant is unable to respond further." ECF No. 80 at 27. Plaintiff now specifies that, in addition to the formal ICC Chrono, he seeks the manually-recorded notes of the January 15, 2009 ICC meeting which are identified in defendant's response (noting that the ICC meetings are not audio- or video-recorded but "are manually recorded by a note-taker and documented on a CDC 128-G Classification Chrono").

Defendant is directed to serve plaintiff, within thirty days after the filing date of this order,

11

with a supplemental response to Interrogatory No. 13, that states, after a reasonable inquiry (which shall be described), whether the manually-recorded notes of plaintiff's January 15, 2009 ICC meeting are still available and, if so, defendant shall provide plaintiff with a copy of those notes.

The court finds that none of the other interrogatories challenged by plaintiff based on defendant's alleged failure to produce responsive documents (Interrogatory Nos. 2-5) triggered the business records option. Most of the information which plaintiff seeks by these discovery requests can be found in CDCR's regulations. Defendant's objection to Interrogatory No. 4 based on its alleged unintelligibility is sustained. Accordingly, defendant need provide no further responses or responsive documents in response to Interrogatory Nos. 1-5, based on the business records option.

b. Interrogatory Nos. 3, 4 and 9

Defendant objected to these interrogatories on the ground that "defendant did not interrogate plaintiff" (Interrogatory Nos. 3 and 4), but conducted only an "interview" of plaintiff on January 15, 2009 (Interrogatory No. 9). Plaintiff relies on the prior assessment of this court that the parties' interaction on this date, as framed in plaintiff's pleadings, constituted a custodial interrogation. The undersigned agrees that this factor renders defendant's general responses to these interrogatories inadequate, and therefore overrules his objections thereto.

In light of the significance of this matter, and despite the general wording of these interrogatories, defendant will be required to provide detailed and specific amended responses to each of these interrogatories, liberally construed, and to produce any supporting or responsive documents, including relevant regulations and written policies or procedures. Defendant's amended responses to Interrogatory Nos. 3, 4 and 9[11] shall inform plaintiff of defendant's specific

---

[11] These interrogatories sought the following information:
    Interrogatory No. 3: State the procedure in effect during January 2009, at CSP-SOL for conducting interviews and interrogations of prisoners allegedly involved in prison gangs, including the procedure for responding to prisoners who[] choose to remain silent. If the procedure is different for interviewing and interrogating members and associates of the Northern Structure/Nuestra Raza (NS/NR) than for members and associates of other prison gangs state both procedures. If these procedures are set forth in any policy, directive, or other document, produce (continued…)

12

decisions and conduct in his interaction with plaintiff on January 15, 2009, and the reasons supporting his response, and shall identify and provide all supporting documents.

### c. Interrogatory Nos. 9-12

Defendant objected to each of these interrogatories as an "incomplete hypothetical," which plaintiff now challenges. Defendant's response and objections to Interrogatory No. 9 have been overruled for the reasons previously discussed. Defendant's objections to Interrogatory Nos. 10-12[12] (including that each is vague and argumentative) are sustained. Moreover, defendant answered each of these interrogatories without waiving his objections.

### d. Summary re: Interrogatories

For the reasons set forth above, plaintiff's motion to compel further responses to his Interrogatories is granted as to his Interrogatory Nos. 3, 4, 9 and 13.

## 3. Requests for Production[13]

Plaintiff seeks further documents responsive to eleven of his twelve production requests. Following is a summary of the court's review of plaintiff's requests and defendant's objections

---

the document(s).
  Interrogatory No. 4: State any training received for identifying and stopping an interview and interrogation about a matter and continuing with another topic when the subject begins to relate the commission of a serious, chargeable crime. If this training is set forth in any document, produce the document(s).
  Interrogatory No. 9: In defendant's opinion, would stating "I have no comment" in response to questioning be tantamount to exercising one's right to remain silent? (Defendant shall respond to this interrogatory both specifically as to his interaction with plaintiff on January 15, 2009, and as a matter of policy, practice and procedure.)

[12] These interrogatories sought the following information:
  Interrogatory No. 10: In defendant's opinion, would writing a 128-B which claims that a prisoner made a statement the officer knows the prisoner did not make constitute a false report?
  Interrogatory No. 11: In defendant's opinion, would writing a 128-B which claims a prisoner did not state something the officer knows the prisoner did state constitute a false report?
  Interrogatory No. 12: In defendant's opinion, would writing a false 128-B with the intent to validate and segregate a prisoner in conditions worse than those on the general population because of the prisoner's exercise of his right to remain silent constitute in some way, shape or form retaliation?

[13] Rule 34 authorizes a party to serve on any other party with a request to produce documents, electronically stored information, or other tangible evidence, that is relevant within the definition set forth in Rule 26(b). See Fed. R. Civ. P. 34(a)(1). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons. . . . An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(B), (C).

13

and responses thereto, see ECF No. 80 at 40-7, and appropriate orders thereon.

a. Production Request Nos. 1-3

Without waiving his objections to Production Request Nos. 1 and 2,[14] defendant averred that he has no responsive documents in his possession, custody or control. Plaintiff contends that defendant must possess documents responsive to these requests because the subject matter is central to this litigation. However, the court is without authority to compel defendant to produce documents that he says he does not possess. Therefore, plaintiff's motion to compel the production of documents responsive to these requests must be denied. However, if at summary judgment or trial defendant intends to rely on any documents that may reasonably be construed as responsive to plaintiff's Production Request Nos. 1 and 2, defendant shall provide plaintiff with such documents, together with amended responses to these requests, within thirty days after the filing date of this order; failure to do so may be grounds to exclude such evidence at trial.

In response to plaintiff's Production Request No. 3,[15] and without waiving his objections, defendant produced one-page abstracts describing the publications identified in categories (a) and (c), and a 36-page printout of the publication identified in category (b). Plaintiff argues that defendant should have provided all of the publications because they are "available on-line and/or are public records." ECF No. 81 at 10. However, this is precisely why defendant need not produce the documents. Publically-available documents are equally available to plaintiff, albeit at a cost, and therefore need not be produced. Plaintiff's motion to compel further production in

---

[14] These requests sought the following documents:
   Production Request No. 1: Any and all policies, directives or instructions to staff concerning debriefing, interrogating and interviewing prisoners, including but not limited to involvement in prison gangs.
   Production Request No. 2: Any and all documents relevant to the rules and regulations of the Northern Structure/Nuestra Raza (NS/NR) prison gang, including but not limited to the Bond(s), Household policies, and other inmates kites found on July 7, 2006.

[15] This request sought the following:
   Production Request No. 3: Any and all articles and documents which may provide guidance of the rules and regulations of the NS/NR, including but not limited to: (a) Carlson, "Prison Interventions: Evolving Strategies to Control Security Threat Groups," 5 Corrections Mgmt. Q 10 (Winter 2001); (b) California Department of Justice, Division of Law Enforcement, Organized Crime in California Annual Report to the California Legislature 2003, available at http://caag.state.ca.us/publications/org_crime.pdf; and (c) "Prison Gangs: Their Nature, Extent and Impact on Prisons," put out by the Department of Justice.

response to this request is therefore denied.

b. Production Request Nos. 4-6[16]

Plaintiff contends that he is entitled to obtain documents responsive to these requests because they seek information related to the subject matter of this action, specifically "self-incrimination, retaliation, and writing false reports." ECF No. 81 at 9. However, defendant appropriately objected to each of these requests on the grounds, inter alia, that they are so overbroad as to time and subject matter to be irrelevant to the facts and claims in this action. Without waiving these objections, defendant avers that he has no responsive documents and directs plaintiff to CDCR's regulations and operating manual for general guidelines. Given the broad nature of these requests, defendant's responses are perfectly reasonable. Moreover, the court lacks authority to compel defendant to produce documents which he states he does not possess. Plaintiff's motion to compel production in response to these requests will therefore be denied.

c. Production Request Nos. 7-8[17]

Plaintiff seeks further production in response to his Request No. 7, but does not specifically dispute defendant's response to Request No. 8, which included production of plaintiff's January 15, 2009 Classification Chrono, and the Second Level Appeal Response to

---

[16] These requests sought the following documents:
   Production Request No. 4: Any and all policies, directive and instructions regarding respect for a prisoner's Constitutional rights, including but not limited to the right to remain silent and not included in Item 1 of this request, and the prohibition, if any, on retaliation.
   Production Request No. 5: Any and all policies, directive and instructions concerning the prohibition on writing false reports, including but not limited to writing false CDCR 128-B's.
   Production Request No. 6: Any and all correspondence with the state and federal Department of Justice(s) regarding policies, records and reports of incidents on the right to remain silent, retaliation and writing false reports and not included in Items 4 and 5 of this request.
[17] These requests sought the following documents:
   Production Request No. 7: Any and all CDCR-128-Bs (General Chronos) concerning prisoners, including but not limited to members and associates of the NS/NR who[] refused to be interviewed by stating, but not limited to "I have no comment," and including but not limited to CDCR-128-Bs written by defendant.
   Production Request No. 8: Any and all documents, audio and video recordings, stenographic notes or transcripts, whether digitally, paper or electronically stored, regarding defendant's interview with Barron during the Institutional Classification Committee (ICC) [meeting] on January 15, 2009, at California State Prison Solano (CSP-SOL).

15

plaintiff's Appeal Log No. CSP-S-09-00374.  Plaintiff contends that the names and CDCR numbers of inmates whose records are responsive to his Request No. 7 can be redacted. However, defendant's objections to this request – including inmate confidentiality and institutional security, and that the request is overbroad, compound, burdensome and irrelevant – are appropriate and sustained.  Morever, defendant avers that he has no responsive documents.

### d. Production Request Nos. 9-12[18]

Together these requests seek documents reflecting any prior occasions when defendant may have been accused of misconduct.  In response to Request No. 9, defendant produced copies of plaintiff's three relevant appeals.  Defendant's objections to plaintiff's broad request for appeals or complaints filed by other inmates are sustained based on confidentiality grounds, as set forth in CDCR regulations and the operations manual (although the confidentiality of other inmates can be protected through redaction and protective orders, when applicable).  However, defendant's objection to the production of any potentially relevant matters in his personnel file based, inter alia, on the official information privilege, requires more.  Although defendant states that he has no responsive documents in his possession, custody of control, he will be required to revisit this matter.

"Federal common law recognizes a qualified privilege for official information."  Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) ("Government personnel files are considered official information.").  "To determine whether the information sought is privileged,

---

[18] These requests sought the following documents:
  Production Request No. 9: Any and all CDCR-602s (Inmate/Parolee Appeals) received by the Appeals Coordinator or their agents at CSP-SOL concerning the mistreatment of inmates by defendant, including but not limited to violating the right to remain silent, retaliation, writing false reports and discrimination.
  Production Request No. 10: Any and all documents, stenographic notes, digitally and electronically stored conversations, between defendant and the Appeals Coordinator or her/his agents, as well as the Institutional Gang Investigator (IGI), including but not limited to Barron's appeals (CSP-S-09-00374; CSP-S-09-00928; and CSP-S-10-00249), and not included in Item 9 of this request.
  Production Request No. 11: Any and all documents created by CSP-SOL staff member or any other Department of Corrections employee or official in response to appeals written against defendant, including but not limited to Barron's appeals (see Item 10 above).
  Production Request No. 12: Any and all discipline, reprimands and personnel complaints against defendant, including but limited to peer-reviewed records, and internal affair reports.

16

courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." Sanchez, 936 F.2d at 1033-34. "The balancing approach of the Ninth Circuit is mirrored in this and other courts' previous determinations that a balancing test is appropriate when the disclosure of law enforcement files in a civil action is at issue." Doubleday v. Ruh, 149 F.R.D. 601, 609 (E.D. Cal. 1993). Documents that are a part of the personnel records of officers defending civil rights actions, while containing sensitive information, are within the scope of discovery. Soto v. City of Concord, 162 F.R.D. 603, 614-15 (N.D. Cal. 1995) (citing Hampton v. City of San Diego, 147 F.R.D. 227, 229 (S.D. Cal. 1993)); Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D. Cal. 1992).

In addition to a privilege log, when applicable, a party seeking to invoke the official information privilege and prevent disclosure must submit an affidavit from an official of the agency in control of the materials sought addressing the following concerns: (1) an affirmation that the agency has maintained the confidentiality of the materials it refuses to disclose; (2) a statement that the affiant personally has reviewed the material in question; (3) a specific identification of the privacy interests that would be threatened by disclosure to the plaintiff; (4) a description of how disclosure pursuant to a "carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests;" and (5) a projection of the extent of harm that would befall the threatened interests if disclosure were ordered. Soto, 162 F.R.D. at 613 (citations omitted).

Defendant relies on the official information privilege despite stating that he has no documents responsive to plaintiff's Production Request Nos. 9 through 12. Defendant will be required to review his responses to these requests in light of the standards set forth above. Defendant is directed to review the contents of his personnel file and any other source that may contain an inmate or peer complaint challenging defendant's professional conduct. Defendant shall then provide supplemental responses to each of these requests, as construed herein, and to identify any responsive documents in a privilege log; OR provide a sworn statement that, after further inquiry, there are no responsive documents in defendant's possession, custody or control, including his personnel file, and no other responsive documents of which defendant is aware.

17

e. <u>Summary re: Requests for Production</u>

For the reasons set forth herein, plaintiff's motion to compel further responses to his Requests for Production of Documents is granted as to his Request Nos. 1, 2, and 9 through 12.

**IV. Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel further discovery, ECF No. 77, is granted in part and denied in part.

2. **Within thirty days after the filing date of this order, defendant shall serve on plaintiff** the following additional discovery:

   a. Amended responses to **Interrogatory Nos. 3, 4 and 9**, based on the court's determination that defendant's interaction with plaintiff on January 15, 2009 was a custodial interrogation, together with any responsive or otherwise supporting documents or authority.

   b. A supplemental response to **Interrogatory No. 13**, that states, after a reasonable inquiry (which shall be described), whether the manually-recorded notes of plaintiff's January 15, 2009 ICC meeting are still available and, if so, defendant shall provide a copy of those notes.

   c. Amended responses to **Production Request Nos. 1 and 2**, together with any responsive documents. Failure to serve amended responses to these requests shall be construed as defendant's representation, subject to exclusionary sanctions, that he will not rely on any document responsive to these requests at summary judgment or trial, specifically, any prison policy, directive or instruction concerning the debriefing, interrogating and interviewing of prisoners, particularly those suspected of gang involvement, and any matter specific to the Northern Structure/Nuestra Raza (NS/NR) prison gang or inmate kites found on July 7, 2006 and referenced in this case.

   d. Supplemental responses and a privilege log in response to plaintiff's **Production Request Nos. 9 through 12**, as described herein; OR defendant's sworn statement that, after further inquiry, there are no responsive documents in defendant's possession, custody or control, including his personnel file, and no other responsive documents of which defendant is aware.

3. **Also within thirty days after the filing date of this order, defendant shall file with the court a copy of all matters served on plaintiff pursuant to this order.**

4. Subject to the above exceptions, discovery has closed in this action; the deadline for filing **dispositive motions is hereby extended to October 14, 2016.**

DATED: May 4, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE