# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RAUL BARRON, | No. 2:11-cv-2678 JAM AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| J. WHITFIELD, | |
| Defendant. | |

I. Introduction

Plaintiff is a former state prisoner[1] who proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's verified Third Amended Complaint (TAC), on plaintiff's retaliation claim against sole remaining defendant Correctional Officer J. Whitfield.[2] See ECF No. 32. The TAC alleges that defendant Whitfield retaliated against plaintiff for exercising his Fifth Amendment right to remain silent at a January 15, 2009 Institutional Classification Committee meeting at California State Prison

////

---

[1] Plaintiff was released from prison in September 2016 and currently resides in San Jose, California.

[2] By order filed June 10, 2015, all defendants with the exception of defendant Whitfield were dismissed from this action due to plaintiff's failure to exhaust his administrative remedies. See ECF Nos. 72, 69.

Solano, by issuing a false chrono later relied on as a source item in support of plaintiff's gang validation.

Currently pending are the parties' cross-motions for summary judgment. See ECF Nos. 102, 103.[3] A hearing was scheduled before the court on January 18, 2017. Deputy Attorney General Janet Hah Chen appeared on behalf of defendant. Plaintiff did not appear. Therefore, the court submitted the parties' motions for decision on the papers without oral argument.

This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and Local General Order No. 262. For the reasons that follow, this court recommends that plaintiff's motion for summary judgment be denied, and defendant's motion for summary judgment be granted.

II. Legal Standards for Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

---

[3] Each party timely filed an opposition. See ECF Nos. 105, 106. Defendant filed a reply that included his response to the court's request for further briefing. See ECF Nos. 107, 108.

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[4]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

---

[4] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

III. Facts

Unless otherwise noted, the following facts are undisputed by the parties[5] or as

---

[5] These facts are taken from Plaintiff's Statement of Undisputed Facts (PUF), ECF No. 102 at 22-25; Defendant's Statement of Undisputed Facts (DUF), ECF No. 103-2; Defendant's

determined by the court based on a thorough review of the record.

- At all times relevant to this action, plaintiff Anthony Barron was a prisoner in the custody of CDCR at California State Prison-Solano (CSP-SOL).
- At all times relevant to this action, defendant was employed by CDCR as a Security & Investigations Correctional Officer in the Institutional Gang Investigation (IGI) Unit at CSP-SOL. Defendant Whitfield's duties included gathering and documenting information pertinent to suspected inmate gang involvement, including interviewing suspected gang members and associates. Whitfield Decl., ¶¶ 2, 5, 9.
- Prison gangs are a threat to the security of CDCR correctional institutions.
- A prisoner's tattoos may be relied on as source items for validation as a prison gang member or associate, as may conduct that reflects the behavior or business of a gang. See Cal. Code Regs. tit. 15, § 3375.3(a)(4)(B).
- The IGI had determined that the rules and regulations of the Northern Structure/Nuestra Raza (NS/NR) prison gang include a prohibition on cooperating with gang investigations, and that inmate refusal to answer questions about gang involvement demonstrates compliance with that rule, known as "Bond Number 7." Whitfield Decl., ¶¶ 9, 10.
- On January 10, 2009, plaintiff was placed in administrative segregation (Ad Seg) for contraband surveillance watch (CSW).
- On January 15, 2009, plaintiff appeared before the Institution Classification Committee (ICC) for review of his Ad Seg placement. An officer initially informed plaintiff, while still in his cell on CSW, that he had committee. Plaintiff, who remained in waist and leg restraints, was escorted to the committee room by two officers; he was seated and an officer stood over him.
- The ICC members were seated when plaintiff arrived. The members included the CSP-SOL Warden, an associate warden, a facility captain, a doctor, a Correctional Counselor II

////

---

Response and Objections to PUF, ECF No. 105-1 at 1-5; and Plaintiff's "Itemized Facts" in response to DUF, ECF No. 106 at 11-3. The court has considered all declarations and exhibits submitted in support of each statement, including pertinent portions of plaintiff's October 15, 2015 deposition transcript, lodged with the court pursuant to ECF No. 104.

[CCII], an Ad Seg sergeant, and defendant Whitfield. Pltf. Depo. at 20:23-4; Whitfield Decl., ¶ 2, Ex. 1.

- Plaintiff described the ICC meeting room as "more like a cubicle that's set up inside the [Ad Seg] building itself." Pltf. Depo. at 21:13-7.
- A committee member informed plaintiff of the reasons for his Ad Seg placement, then the committee acted to retain plaintiff's placement pending completion of his CSW. The committee meeting lasted a total of six or seven minutes. Pltf. Depo. at 23:7-9.
- During the meeting, defendant Whitfield attempted to interview plaintiff about his possible involvement with the Northern Structure/Nuestra Raza (NS/NR) prison gang. This interaction lasted "a minute or two, if that." Pltf. Depo. at 28:4-7.
- Defendant Whitfield memorialized the attempted interview in a CDC 128B Chrono he authored the same day, January 15, 2009, as follows, see Whitfield Decl., ¶¶ 4-6, Ex. 2:

> On January 15, 2009, I attempted to interview inmate BARRON, Anthony, F73020, regarding his involvement with the Northern Structure/Nuesrtra [sic] Raza Prison Gang. Inmate Barron stated, "I have no comment." Inmate BARRON was advised that he was abiding by the rules and regulations of the Northern Structure/Nuerstra [sic] Raza Prison Gang specifically, bond number 7, which states "At no time will an 'N' endanger the life of his fellow 'N' nor will there be any tolerance for dealing with the K-9 (Institutional Gang Investigator, IGI) or enemy. To do so will be an act of treason.["] After inmate Barron was advised he still refused to be interviewed. The following was copied verbatim from various inmate kites recovered on July 7, 2006, during an operational search: "HHP" (Housed Hold Policy) at CSP-Solano. At no time will a HHM (House Hold Member) agree to any interview or pose for shots (pictures) with or for IGI/ISU/FBI or any other organizations of law enforcement or administration, nor will we sign any chrono etc. Should we be cuffed by IGI/ISU or cuffed up to talk to the "gooners" (IGI) our statement will be "no comment." At no time did inmate Barron state, "I am exercising my Fourth and Fifth Amendment Rights." This 128B should be considered as one source of validation towards Inmate BARRON as a member of the Northern Structure/Nuesrtra [sic] Raza Prison Gang.

- Plaintiff disputes defendant Whitfield's assertion that plaintiff said, "I have no comment." See Pltf. Rsps. to DUF #14, at ECF No. 106 at 12; see also Pltf. Depo. at 27:14-5. Plaintiff also disputes defendant's assertion that plaintiff did not exercise his Fifth Amendment rights (if only implicitly), and defendant's conclusion that plaintiff was abiding by NS/NR rules

6

and regulations. See Pltf. Rsps. to DUF #14, at ECF No. 106 at 12.

- When asked at his deposition, "Did you ever say, I am exercising my fifth amendment right?" during his interview with Whitfield, plaintiff answered, "Not that I recall." Pltf. Depo at 28:11-3.

- Plaintiff relies in part on defendant Whitfield's responses to plaintiff's Requests for Admissions to recount the parties' pertinent interaction. Although defendant objected to each of the following requests, and stated that he had no specific recollection, defendant relied on the "Discussion" section of the March 26, 2009 Second Level Review decision addressing plaintiff's relevant appeal to "admit" each of the following matters in discovery, see Pltf. MSJ, Ex. A, ECF No. 102 at 28-30:

> RFA 2: Defendant asked Barron if he had any Tattoos.
> RFA 3: Barron said "yes."
> RFA 4: Defendant asked if he could take pictures of Barron's tattoos.
> RFA 5: Barron asked defendant if he had the right to say "no."
> RFA 6: Defendant said, "Yeah, I'll give you that right."
> RFA 7: Barron said "ok then, no."

- Plaintiff also relies on the following facts from the "Discussion" section of plaintiff's appeal on Second Level Review,[6] which followed interviews with both plaintiff and defendant, see PUF, ¶¶ 7-12; Pltf. MSJ, Ex. B, ECF No. 102 at 39:[7]

> [O]n January 15, 2009, Officer Whitfield attempted to question appellant of his involvement with the Northern Structure/Nuestra Raza Prison Gang. . . . Officer Whitfield . . . asked appellant if he had any tattoos. Appellant responded "yes." When asked if they could be photographed, appellant asked if he had a choice. Officer Whitfield asked the appellant the same question again. Appellant replied photos are already in his C-File. Appellant then asked if he had the right to say no. Officer Whitfield said yes, he had that right. Appellant chose to say no to Officer Whitfield's request to take the photographs. At that time, Officer Whitfield informed

---

[6] In light of defendant's prior reliance on this Second Level Review "Discussion" in responding to plaintiff's Requests for Admission, defendant's objections to plaintiff's reliance on other portions of the Discussion, on hearsay grounds, see ECF No. 105-1 at 3 (Df.'s Response to PUF 8-12), are overruled for purposes of the pending motions.

[7] Plaintiff does not rely on the following portion of the Second Level "Discussion" (in italics):
> [O]n January 15, 2009, Officer Whitfield attempted to question appellant of his involvement with the Northern Structure/Nuestra Raza Prison Gang. *Appellant relied with "no comment."* Officer Whitfield *then asked* appellant if he had any tattoos. . . .

7

> appellant he was issued a validation point. Appellant's position is
>> that Officer Whitfield was baiting him to respond unfavorably to incriminate himself.

- Plaintiff's tattoos were previously photographed by prison officials in 2003 and are presumably retained in plaintiff's central file. Pltf. Depo. at 24:10-25:6.

- Under prison regulations during the relevant period, three source items were needed to validate an inmate as a member or associate of a prison gang; one source item must be a "direct link." Lujan Decl., ¶ 6; see Cal. Code Regs. tit. 15, § 3378.2.

- On September 3, 2009, a gang validation package for plaintiff was received by CDCR's Special Services Unit (SSU) from CSP-SOL IGI Lt. R. Soria. Lujan Decl., ¶ 4, Ex. 1. Six source items were included,[8] all considered valid and supporting plaintiff's validation. One of the six items was the January 15, 2009 CDC 128B Chrono authored by defendant Whitfield. Lujan Decl., ¶¶ 7 & 9, Ex. 1.

- Defendant Whitfield contends that he was not involved in the preparation, submission, or review of plaintiff's gang validation package and, as an S&I Officer, was not authorized to prepare, submit, or review gang validation packages. Whitfield Decl., ¶ 11. The decision whether to include defendant Whitfield's January 15, 2009 CDC 128B Chrono in plaintiff's validation package was made by IGI Lt. Soria. The SSU made the final determination that all of the items in plaintiff's validation package met validation requirements. Lujan Decl., ¶ 9.

- Plaintiff disputes defendant's assertion that he "was not involved in the preparation, submission and/or review of my validation package" on the ground that defendant intended that the chrono he prepared be used in validating plaintiff. See PUF 16, 18; Pltf. Rsps. to DUF 24.

- On October 23, 2009, Plaintiff was validated as an Associate of the Northern Structure prison gang and transferred to the institution's Security Housing Unit (SHU) for an indeterminate term. Lujan Decl., ¶ 5, Ex. 1. The conditions of the SHU are significantly more restrictive than general population housing.

- Although the January 15, 2009 CDC 128B Chrono authored by defendant Whitfield

---

[8] Source Items 2 and 3 were supporting documents for Item 1. See Lujan Decl., Ex. 1.

was included in plaintiff's validation package, even if it were not plaintiff still would have been validated because only three sources items were required and the "direct link" requirement was met by another source item. Lujan Decl., ¶ 10, Ex. 1.

- Plaintiff asserts that each of the source items underlying his validation were illegitimate and "insufficient." See Pltf. Rsps. to DUFs 21, 25.

IV. Discussion

Plaintiff contends that the Fifth Amendment guaranteed his right to remain silent under the circumstances; defendant prepared the subject chrono in retaliation for plaintiff's exercise of his constitutional rights; and defendant's preparation of the chrono was not supported by a legitimate penological goal. Defendant contends that no Fifth Amendment right attached to the questioning of plaintiff; a legitimate penological goal justified defendant's writing of the chrono; and, even assuming plaintiff had a Fifth Amendment right to remain silent, plaintiff has failed to demonstrate that defendant's preparation of the chrono was motivated by plaintiff's exercise of his constitutional rights. Alternatively, defendant contends that he is entitled to qualified immunity.

A. Legal Standards for Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted). Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Rhodes at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing Rhodes at 568, n.11).

The alleged adverse action need not itself be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not

9

"establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir.1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). "[T]he mere *threat* of harm can be an adverse action." Brodheim, 584 F.3d at 1270 (original emphasis); accord, Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). Thus, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. However, not every allegedly adverse action will support a retaliation claim. See e.g. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'") (citation omitted).

To sustain a retaliation claim, plaintiff must plead facts that support a reasonable inference that plaintiff's exercise of his constitutionally protected rights was the "substantial" or "motivating" factor behind the defendant's challenged conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 419 U.S. 274, 287 (1977). Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the challenged conduct. Pratt, 65 F.3d at 806 (citing Rizzo, 778 F.2d at 532). Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990). Where an adverse action occurs shortly after the protected conduct, we have held that the timing creates an inference of retaliatory motive. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) ("'[T]iming can properly be considered as circumstantial evidence of retaliatory intent'" (quoting Pratt, 65 F.3d at 805)); see also Soranno's Gasco, 874 F.2d at 1316.

### B. Analysis

For the reasons set forth below, the court finds that the evidence fails to support a reasonable inference that defendant's preparation of the subject chrono was motivated by plaintiff's exercise of his constitutional rights. Rather, the evidence demonstrates that defendant

reasonably construed plaintiff's silence as behavior consistent with the rules and regulations of the Northern Structure/Nuestra Raza prison gang, and his documentation of this assessment advanced a legitimate penological goal.

In the following discussion, the court initially addresses the evidence that supports plaintiff's retaliation claim, then turns to the remaining elements of the claim that are unsupported by the evidence.

### i. Adverse Action

The parties do not dispute that defendant's challenged conduct was an "adverse action" supporting the first element of plaintiff's retaliation claim. Defendant's took "adverse action" by authoring of the CDC 128B Chrono on January 15, 2009 immediately following his interaction with plaintiff at the ICC hearing, in which he found that plaintiff's refusal to be interviewed regarding his possible involvement with the Northern Structure/Nuestra Raza prison gang was itself evidence that plaintiff was abiding by the gang's rules of silence, and should be considered as one source item in support of plaintiff's validation as a member of the gang. Subsequently, this chrono became part of the evidentiary record relied on to validate plaintiff as an Associate of the Northern Structure prison gang.

### ii. Protected Conduct

Plaintiff contends that his refusal to answer defendant's questions at the ICC hearing reflected the exercise of his Fifth Amendment privilege against self-incrimination/right to remain silent, citing Miranda v. Arizona, 384 U.S. 436, 439 (1966), and thus was constitutionally protected conduct. At screening, District Judge John A. Mendez, agreed. See ECF No. 29 at 6-8. His assessment is consistent with the decisions of other judges in different cases presenting the same issue.[9]

---

[9] See e.g. Bridges v. Hubbard, 2013 WL 3773886, at *9 (E.D. Cal. July 17, 2013) (finding "protected conduct" for purposes of a retaliation claim in the plaintiff's exercise of "both his First Amendment right not to speak in response to defendant[]'s questions and his Fifth Amendment right against self-incrimination"),report and recommendation adopted, 2013 WL 5230239 (E.D. Cal. Sept.16, 2013) (Case No. 2:09-cv-0940 TLN DAD P); accord, Powell v. Wilner, 2009 WL 840756, at *10 (D. Colo. Mar. 30, 2009) (finding that plaintiff exercised his "First Amendment right not to speak and Fifth Amendment right against self-incrimination"); cf., Mendia v. Garcia,

11

Defendant vigorously maintains that no constitutional right attached to plaintiff's conduct at the ICC hearing, principally on the ground that plaintiff was not being interrogated about, or charged with, a crime. However, because this court finds that plaintiff's retaliation claim is unsupported in other ways, the undersigned concludes that the nature of plaintiff's conduct should not be revisited.

Accordingly, for purposes of the instant motions, this court applies the "law of the case" doctrine and accepts as settled the determination that, under the circumstances presented here, plaintiff's refusal to answer defendant's questions or have his tattoos photographed at the ICC hearing reflected the exercise of his Fifth Amendment right to remain silent. See Agonstini v. Felton, 521 U.S. 203, 236 (1997) ("Under [the law of the case] doctrine, a court should not reopen issues decided in earlier stages of the same litigation" unless the prior decision was clearly erroneous and would result in manifest injustice.).

### iii. Chilling of First Amendment Rights/Actual Harm

Ninth Circuit case law requires the chilling of First Amendment rights to support a prisoner retaliation claim. See Rhodes, 408 F.3d at 567-68. Plaintiff contends that he was tangibly harmed by defendant's authoring of the subject chrono. Plaintiff also contends that "defendant's advisements before continuing to question Barron were intended to 'discourage' silence, and/or 'influence' compliance. The threat did not linger in the air. It was executed. It was used to label Barron a security threat, and to transfer him to the SHU where he lost privileges, personal property, and vocational training." ECF No. 102 at 18 (internal citations omitted).

"[T]he proper First Amendment inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 567-68 (citation, internal quotation marks and emphasis omitted). Significantly, "harm that is more than minimal will almost always have a chilling effect. Alleging harm *and* alleging the

---

2016 WL 2654327, at *8 n.4 and related text (N.D. Cal. May 10, 2016) (finding that plaintiff failed to state a "Fifth Amendment right to remain silent" claim because he had "not alleged a custodial interrogation," but did state a "First Amendment . . . right not to speak, as supported in Bridges").

12

chilling effect would seem under the circumstances to be no more than a nicety." Id. at 567 n.11 (original emphasis ) (citation omitted).

Defendant does not directly address whether the evidence satisfies this element of plaintiff's retaliation claim. This absence of argument, together with plaintiff's demonstrated harm, supports the finding that this element is undisputed.

                        iv.        Advancement of Legitimate Correctional Goal

To sustain a retaliation claim, plaintiff must introduce evidence demonstrating that the adverse action taken by defendant "did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 568. Plaintiff bears the burden of proving the absence of legitimate correctional goals for defendant's challenged conduct. See Pratt, 65 F.3d at 806 (citing Rizzo, 778 F.2d at 532).

Plaintiff's concession that the identification and control of prison gang activity is a legitimate correctional goal of CDCR and its employees supports a finding that defendant's authoring of the subject chrono advanced a legitimate penological goal. Plaintiff's efforts to refute this finding are premised on his allegations concerning defendant's motivation for authoring the chrono, not on the ground that the chrono lacked a legitimate correctional objective. Therefore, the court finds this element undisputed in defendant's favor.

                        v.        Defendant's Motivation

The remaining inquiry is whether plaintiff has submitted evidence demonstrating that the exercise of his constitutional rights, rather than a legitimate penological objective, was the primary or substantial motivation for defendant's preparation of the subject chrono. Plaintiff contends that defendant prepared the subject chrono "because of" plaintiff's exercise of his constitutional right to remain silent. Defendant contends that he prepared the chrono "because of" plaintiff's adherence to Northern Structure prison gang rules of silence.

To survive summary judgment on a retaliation claim, plaintiff must present evidence that supports a reasonable inference that plaintiff's exercise of his constitutionally protected rights was the "substantial" or "motivating" factor behind the defendant's challenged conduct. Soranno's Gasco, 874 F.2d at 1314. Mere conclusions of hypothetical retaliation will not suffice.

Plaintiff must present evidence showing that defendant's response was "because" plaintiff exercised his constitutional rights. Frazier, 922 F.2d at 562 n.1.

"To raise a triable issue as to motive, [plaintiff] must offer 'either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive].'" McCollum v. CDCR, 647 F.3d 870, 882 (9th Cir. 2011) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002) (second brackets in original). These three types of circumstantial evidence are: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) any other evidence demonstrating that defendant's asserted reasons for his adverse action were false or pretextual. McCollum, 647 F.3d at 882 (citing Allen, 283 F.3d at 1077).

Applying this analysis, the court finds no direct evidence of retaliatory motive in this case. The only circumstantial evidence supporting an inference of retaliatory motive is the proximity in time between plaintiff's protected conduct and defendant's alleged retaliation. Specifically, defendant authored the challenged 128 B Chrono on the same day that plaintiff exercised his right to remain silent.

Plaintiff has offered no evidence of the second type of relevant circumstance, defendant's expressed opposition to plaintiff's protected conduct. On the contrary, the record demonstrates that defendant expressly acknowledged to plaintiff at the ICC hearing that he had the right to refuse photographs. Although defendant informed plaintiff that his silence would be counted as a validation point because consistent with the rules of the Northern Structure/Nuestra Raza prison gang, this consequence was required by prison regulations and defendant's professional responsibilities. Defendant did not express opposition to plaintiff's silence per se, but rather informed plaintiff that his silence evidenced gang activity that defendant was required to document. Plaintiff has submitted no evidence supporting a contrary inference.

Nor has plaintiff identified any circumstances supporting an inference that defendant's asserted reason for his adverse action was pretextual. Plaintiff's arguments on this point rest entirely on conjecture. See Pltf. Mtn., ECF No. 102 at 19; Pltf. Oppo., ECF No. 106 at 4-5.

////

Accordingly, the court finds that the circumstantial evidence of retaliatory motive reflected in the timing of defendant's challenged conduct is both objectively weak and outweighed by (1) the absence of any evidence that defendant opposed plaintiff's conduct, and (2) the existence of regulations and investigatory practices of general application that directed defendant to take the challenged adverse action. On this basis, the court finds that plaintiff has failed to support the causation element of his retaliation claim.

### vi. Summary of Evidence on Retaliation Claim

In summary, the court finds that three of the five elements of plaintiff's retaliation claim are undisputed by the parties and/or supported by the evidence: (1) plaintiff engaged in protected conduct, (2) after which defendant took the adverse action of preparing the subject chrono, and (3) this adverse action chilled the further exercise of plaintiff's First Amendment rights. However, the court finds that the evidence fails to support a reasonable inference that defendant's action was motivated by plaintiff's protected conduct or failed to advance a legitimate correctional goal. In the absence of evidence supporting a reasonable inference in favor of plaintiff on each of the five elements of his retaliation claim, summary judgment must be granted in favor of defendant.

### C. Qualified Immunity

Alternatively, defendant seeks summary judgment based on qualified immunity. The qualified immunity analysis involves two inquiries: whether the facts alleged by plaintiff establish a constitutional violation, and whether the right at issue was clearly established at that time. Saucier v. Katz, 533 U.S. 194, 201 (2001). "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." Pratt, 65 F.3d at 806. Because the undersigned finds that plaintiff has not demonstrated a constitutional violation of his rights, this court need not reach defendant's qualified immunity defense.

### V. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment, ECF No. 102, be denied;

2. Defendant's motion for summary judgment, ECF No. 103, be granted; and

3. Judgment be entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 27, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE